

FILED

2021 JAN 19 PM 1:58

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RODERIC BOLING,**

     **Plaintiff**

**v.**

                               **Case No.:**

                               6:21-cv-129-ORL-78LRH

**CITY OF LONGWOOD,**
**LONGWOOD POLICE DEPARTMENT,**
**OFC. MASON ROTHENBURG, OFC.**
**CORPORAL B. RACINE, OFC**
**SGT. KRISTOPHER BURNAM,**
**LT. SHEA LIEUTENANT, LONGWOOD**
**CHEIF OF POLICE DAVID DOWDA,**
**OFFICE OF THE STATE ATTORNEY**
**SEMINOLE COUNTY, ASSISTANT**
**STATE ATTORNEY MARCUS HYATT,**
**ASSISTANT STATE ATTORNEY RICHARD**
**FARMER, ASSISTANT STATE**
**ATTORNEY FELONY DIVISION CHIEF**
**JAMES CARTER;**

       **DEFENDANTS**

_____/

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff , RODERIC LEE BOLING, in Propria Persona, commences

this action for civil rights violations, under 42 U.S.C. Section 1983, against the above named

Defendants in both their individual and official capacity as employees, agents or representatives

acting on behalf of and/or under the authority of their respective City, County and State Departments. Plaintiff avers the following in support:

## INTRODUCTION

This is a civil rights action filed on behalf of Plaintiff, RODERIC LEE BOLING III(BOLING), whose rights under the Fourth and Fourteenth Amendments to the United States Constitution were violated when he was, without the existence of probable cause or arguable probable cause, wrongfully arrested, unlawfully detained, and maliciously prosecuted by Longwood Police Officers, employed by the City of Longwood. Plaintiff's constitutional rights were further violated by Longwood Police Department and its Officers as they collaborated, colluded and conspired with each other and with individuals, employed by the Seminole County State Attorney's Office, participate in or influence to continuing unlawful detention, and maliciously prosecution the Plaintiff. Plaintiff alleges at all times Defendants individually and cumulatively, willfully and knowingly acted in bad faith, while acting under the color of law as agents of the Longwood Police Department (LPD). LPD Defendants further conspired with each other and with the alleged victim, Elmo Ramos, in order to omit relevant facts, fabricate evidence and put forth a false narrative which described a series of nonexistent events, upon which the LPD Officers then claimed to have established sufficient probable cause or arguable probable cause to effectuate Plaintiff's arrest, ongoing illegal detention, and malicious prosecution. Though Plaintiff was not incarcerated pending trial, he was subject to restrictions on his ability to travel and other "restraints not shared by the public generally" subjecting Plaintiff to an ongoing deprivation of his liberty. In the end, Plaintiff received a favorable termination on

all pending charges and said favorable termination was consistent with an indication of innocence.

This is an action for money damages brought pursuant to 42 U.S.C. Section 1983, under the Fourth and Fourteenth Amendments to the Constitution of The United States, and under the common law of the State of Florida against the Defendants.

## STATUTE OF LIMITATIONS

This action is timely filed, the four-year limitations period in § 95.11(3) applies to § 1983 claims arising in Florida. See: *Ellison v. Lester,* 275 Fed. Appx. 900 (11th Cir. 2008) (unpublished). "Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck* , see 512 U.S. at 486–487, 114 S.Ct. 2364, will the statute of limitations begin to run." The Supreme Court has countenanced analogies to common law malicious prosecution at the second step. See *McDonough v. Smith,* 139 S. Ct. 2149, 2156 (2019); *Wallace v. Kato,* 549 U.S. 384, 389-90 (2007); *Winfrey v. Rogers,* 901 F.3d 483, 492-93 (5th Cir. 2018). Where the Plaintiff complains about "detention accompanied, not by absence of legal process, but by wrongful institution of legal process," then that claim should be analogized to malicious prosecution. Wallace, 549 U.S. at 390. As the Supreme Court added just last year, malicious prosecution involves a claim that a "defendant instigated a criminal proceeding with improper purpose and without probable cause." *McDonough,* 139 S. Ct. at 2156. It is therefore most apt when the Plaintiff "challenge[s] the integrity of criminal prosecutions undertaken pursuant to legal process." Id. (internal quotation

marks omitted). *Caldwell v. City of San Francisco*, No. 12-cv-01892-DMR (N.D. Cal. Oct. 26, 2020)

"[T]here is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government." In light of the Ninth Circuit's decision, in *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1201 n.11 (9th Cir. 2020), a cause of action accrues under federal law, when a Plaintiff knew or should have known of the injury that forms the basis of the claim. *Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (holding that the limitations period begins to run "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights"). Put another way, a claim accrues, and the limitations period begins to run, "when the Plaintiff has a complete and present cause of action . . . , that is, when the Plaintiff can file suit and obtain relief." There is not " 'a complete and present cause of action,' " to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." *Wallace v. Kato*, 549 U.S. at 388, 127 S. Ct. 1091; see also *Crespo v. Fla. Comm'n on Offender Review*, No. 4:16cv471-WS/CAS (N.D. Fla. Mar. 9, 2017).

## JURISDICTION AND VENUE

1. All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute Chapter 768.28.

2. This action seeks damages pursuant to 42 U.S.C. § 1983 for violation of the Fourth,   and Fourteenth Amendment rights of Plaintiff s. This Court has jurisdiction over Plaintiff s' claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.  Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) as all defendants reside in this district and all of the acts and omissions giving rise to this action occurred in the Middle District of Florida.

4.  This court has supplemental jurisdiction over state law claims through the operation of 28 U.S.C. § 1367. With respect to the state law claims, timely notices of tort claim were filed as to the municipal defendants in accordance with Fla. Stat. § 768.28.

## JURY TRIAL DEMAND

5.  Plaintiff demands a jury trial in this action, for all issues and claims so triable.

## PARTIES

**PLAINTIFF:**

6.  Plaintiff, RODERIC LEE BOLING (BOLING) is, and at all times material hereto was, a resident of the State of Florida. Plaintiff BOLING is, and at all times material hereto was, a resident of the County of Seminole. Plaintiff was peacefully exercising his Constitutional rights when he was, without warning, probable cause or arguable probable cause, unlawfully detained, falsely arrested and maliciously prosecuted Defendants Rothenberg, and supervisor CPL RACINE.

**DEFENDANTS:**

7.  Defendant CITY OF LONGWOOD, Defendant LONGWOOD POLICE DEPARTMENT (LPD), Defendant ACTING CHEIF OF POLICE DAVID DOWDA, (hereinafter "DOWDA") is sued in his official capacity as acting Chief of the Longwood Police

Department, Defendant LPD LIEUTENANT KEVIN SHEA being the officer in charge of the Longwood Police Department/Longwood Police (hereinafter "LPD") afternoon shift. Defendant LPD SUPERVISING OFFICER SGT. KRISTOPHER BURNAM(Direct Supervisor of CPL RACINE and Rothenberg), Defendant LPD OFC. CORPORAL B. RACINE(immediate supervisor of Rothenberg), Defendant LPD OFC. MASON ROTHENBERG(Rothenberg) was a law enforcement officer employed by the Longwood Police Department's Office and was first responding Officer to the scene. LPD is a governmental agency duly organized under the laws of the State of Florida, located in City of Longwood, Seminole County. DOWDA personally has, or shares with his designees, final policy-making authority for LPD, including policies for arrests, use of force, training and supervision of officers. The Longwood Police Department and DOWDA are responsible, as a matter of law, for the actions of LPD officials, agents and employees. Defendant DOWDA, as Longwood Police Department, is responsible for the LPD policies and practices challenged herein as unlawfully applied to Plaintiff. Defendant OFFICE OF THE STATE ATTORNEY SEMINOLE COUNTY(SAO), Defendant ASSISTANT STATE ATTORNEY MARCUS HYATT(HYATT) who led the ongoing pursuit of the malicious prosecution of Plaintiff, Defendant ASSISTANT STATE ATTORNEY RICHARD FARMER(FARMER) actively participated in the malicious prosecution of Plaintiff, Defendant FELONY DIVISION CHIEF ASSISTANT STATE ATTORNEY JAMES CARTER(CARTER) who oversaw and ratified the actions and decisions of defendants FARMER and HYATT. CARTER directly participated in making prosecutorial decisions in Plaintiff's case, he exercised authority by reviewing FARMER and HYATT's decisions through formal and

informal channels, and participated in proceeding both in and out of the courtroom, concerning the circumstances and status of Plaintiff 's case throughout the malicious prosecution of Plaintiff;

## FACTUAL ALLEGATIONS

8.   On or about July 10, 2016 Senior Benefits entered into an agreement to sub-lease office space, located at: 851 E. SR 434 Suite 140, in the city of Longwood, Seminole County, FL 32750, which is within the jurisdiction of Longwood Police Department.

9.   On July 13, 2016 at approximately 11:00am Plaintiff dropped of cleaning supplies to Plaintiff's then wife at her newly acquired business office location at 851 E. SR 434 Suite 140 Longwood FL 32750. While departing the location, Plaintiff engaged in a private conversation with an individual later identified as Elmo Ramos(RAMOS). RAMOS claimed to be a previous employee of the now defunct telemarketing business owned and operated by a Jason Sloat(SLOAT) at the 851 E. SR 434 Suite 140 location. SLOAT had advertised the fully furnished office space for "sublease" and Plaintiff 's wife and her business partner Jason Goesell(GOESELL) agreed to purchase the office contents and sublease the office space in order to expand their existing insurance business.

10.   During Plaintiff 's conversation with RAMOS, Plaintiff informed RAMOS the new insurance company was looking to hire any of SLOAT'S experienced telemarketers that were recently laid off due to SLOAT'S business closing. RAMOS claimed he didn't intend to seek employment at the new insurance business but he did want the almost 2 weeks of backpay ,

approximately $325.00 owed by SLOAT, plus an additional $1500 for "his troubles". Plaintiff suggested, if that were the case, RAMOS may want to try suing SLOAT in small claims Court and then departed.

11. RAMOS, later that day, called GOESELL and informed GOESELL that he "figured out who the guy driving the chrome Ferarri(Plaintiff) was", that he "had recorded his earlier conversation with Plaintiff " and unless he was promptly paid $1,500.00 "He would first call GOESELL'S insurance provider" and make unspecified allegations of wrongdoing, then he would "turn over the recording to Channel 9 News Action reporter Todd Ulrich, who had already had a previous run-in with Plaintiff". GOESELL, who refused to be threatened or extorted, declined RAMOS' offer.

12. RAMOS then called the CEO of the insurance provider that was issuing GOESELL's insurance contracts and repeated the same threat. The insurance company CEO declined the offer, immediately called GOESELL and informed him of the content of the call, including RAMOS' statement about recording Plaintiff 's private conversation and calling Channel 9 news.

13. GOESELL first called, then met with, Plaintiff and explained what had transpired with RAMOS' phone threats. Plaintiff suggested GOESELL drive to Longwood Police Department (LPD) on his way to the office the next morning(before 9am) and inquire about filing a criminal complaint for extortion(attempted) and for illegal recording Plaintiff's private conversation. Plaintiff suggested that GOESELL request LPD Officers accompany him to the new office location to confront RAMOS and standby to "keep the peace" while

Plaintiff's wife (Mrs. Boling) and GOESELL paid any newly hired ex-employees of SLOAT'S, their backpay owed by SLOAT.

14. At 9:00am On July 14, 2016 a group of approximately 15-20 potential new employees gathered at the business office where the unlawful arrest would later occur. Some came for the available employment positions with the new business. Others came to inquire about collecting "backpay they were owed" by SLOAT'S previously closed business.

15. Mrs. Boling brought tot he office with her $20,000.00 in cash, 2 copies of both Florida Statute 943.03.51(wire, oral, electronic communication) and Florida Statute 836.05(Extortion) to provide to LPD Officers, and written release forms for documenting any being money paid out to SLOAT'S ex-employees.

16. GOESELL failed to arrive on time at the office location at 9:00am with the LPD as was planned. Mrs. Boling called Plaintiff, expressed her concern, and asked if Plaintiff could drive to the office and be present until GOESELL arrived with LPD, considering she had 20k in cash and she didn't know any of SLOAT'S previous telemarketing employees.

17. Plaintiff arrived at the office location at approximately 10:00 am, prior to GOESELL and LPD and asked if the office's existing video security system was functioning properly. Plaintiff suggested Mrs. Boling and GOESELL video record any cash payment transactions to avoid any claims or discrepancies now that Channel 9 news was potentially involved. Since Mrs. Boling could not determine if the office video security system was functioning properly, Plaintiff set-up his personal I-Pad to record a video, so as to create a video record of the days transactions.

18.  While waiting on GOESELL, Plaintiff asked to speak to RAMOS, in the office adjacent to the lobby where the prospective employees were waiting. Plaintiff intended to inform RAMOS of the criminal complaints being filed against him and that LPD was on their way along with GOESELL.

## FACTUAL ALLEGATION VIEWABLE ON PLAINTIFF'S I-PAD HD VIDEO TAPE

19.  At all times during the conversation and interaction between Plaintiff and RAMOS, RAMOS can be seen in possession of two(2) different cell phones. RAMOS rotated between using both cell phones, and he showed both cell phones to LPD Officers at the scene and later surrendered one of them into evidence for DNA sampling.

20.  Plaintiff confronted RAMOS about his claims that he illegally recorded Plaintiff and demanding he be given money that neither the company, nor the owners, owed to him. After Plaintiff informed RAMOS that a criminal complaint was being filed and LPD officers were en route to the office, RAMOS called an unknown person on one of his cell phones expressing concern he may be getting arrested. RAMOS continued talking on said phone call as he exited the office, and clearly stated to Plaintiff "I'm just gonna wait for the Longwood Police to arrive".

21.  Plaintiff remained inside the office conversing with a another ex-employee of SLOATS about RAMOS' behavior. Mrs. Boling then entered the office and informed Plaintiff that RAMOS was videotaping her, her vehicle's license plate and Plaintiff's Ferrari and making threatening comments about damaging the vehicles.

22. Plaintiff exited the office and told RAMOS to stop taking videos of the vehicles and to get off the property because he was being trespassed. Plaintiff then asked the office manager to call 911 and request they send officers.

## FACTUAL ALLEGATIONS

23. LPD Officer Mason Rothenberg arrived on scene at approximately 10:15 am. Plaintiff retrieved his I-Pad, greeted Rothenberg and explained the previous day's events and the morning in question's events. Plaintiff requested RAMOS be trespassed and requested to file a criminal complaint for illegal recording and extortion. Rothenberg refused Plaintiff's request that he trespass RAMOS, telling Plaintiff "you said you don't work here so you can't have someone trespassed".

24. Rothenberg further refused to take any criminal complaint from Plaintiff, refused to investigate Plaintiff's criminal allegations against RAMOS, and he refused to speak or even listen to multiple witnesses who were present during the times when RAMOS' crimes were allegedly committed. Rothenberg claimed no violation, of either law, had occurred and that it was not illegal to surreptitiously record a private face to face conversation in the State of Florida.

25. Rothenberg asked Plaintiff the following questions: "while this guy(RAMOS) was causing a scene did you try to force him out of the building at all?" (@4:29 of audio tape), "did you bump him at all" (@5:04 of audio tape), "Did he get on his phone or anything like that?"(@5:26 of audio tape), Plaintiff responded in the negative to each question.

26. At Plaintiff's request Rothenberg(a fairly new police officer at the time) called for another LPD officer, hoping to get a second opinion on Rothenberg's interpretation of the criminal

Statutes. After Rothenberg again interviewed RAMOS he returned instructed Plaintiff to pay RAMOS "the $1,500 he is owed so he can leave". Plaintiff again explained to Rothenberg that neither the Plaintiff nor RAMOS had ever worked for the new company, and the insurance company owed RAMOS nothing, so that wouldn't be possible.

27. Upon backup Officer's arrival, Plaintiff again explained the relevant events, his understanding of the Statutes, and requested the backup officer accept the criminal complaints. The Officer conferred privately for several minutes with Rothenberg then declined Plaintiff's request. Plaintiff then requested Rothenberg call for his supervisor, Rothenberg refused and again instructed Plaintiff to "just pay him(RAMOS) so we can leave". Plaintiff again refused and for a second time requested Rothenberg's call for his supervisor. Rothenberg became angry and demanded Plaintiff produce identification, Plaintiff complied, Rothenberg called for his supervisor.

28.  Rothenberg then questioned a witness named James Laravuso, as to what he saw happen, questioned Mrs. Boling at to what happened, then demanded both Mrs. Boling and the 911 caller produce identification with no explanation as to why.

29. LPD Supervisor, Corporal B. Racine(RACINE), arrived on scene and spoke first with Rothenberg and the backup officer, then Plaintiff. Plaintiff recited the preceding events, his understanding of the applicable criminal Statutes, and requested RACINE speak to the witnesses present and permit Plaintiff to file a criminal complaint, she flatly refused.

30. LPD had been on scene for well over 1 hour when Rothenberg approached Plaintiff and said "I'm going to ask you one last time are you going to pay him(RAMOS) or not" Plaintiff again declined.

31. All three (3) LPD officers then huddled conversing with RAMOS for several minutes. Rothenberg then summoned Plaintiff to the parking lot and with no questioning or explanation executed a warrantless arrest of Plaintiff for Robbery by Sudden Snatching F.S. 812.131(Third Degree Felony), Grand Theft F.S. 812.014(Third Degree Felony), and Preventing a Victim from Calling 911 during commission of felony, a (Second Degree Felony) under F.S. 914.22 Obstructing Justice-Proceeding Tampering Intimidate Threaten Etc Witness Victim Informant. Plaintiff was taken into custody, booked, and given a $12,000.000 bail.

32. At no time prior to Plaintiff being placed under arrest, or after his arrest, did Rothenberg attempt to get Plaintiff's side of "the story" in response to RAMOS' allegations. Nor did Rothenberg or CPL RACINE at any time indicate, to the three(3) witnesses they interviewed, that RAMOS had made any allegations of wrongdoing by Plaintiff or that RAMOS had provided Officers with information that conflicted with the facts as the witnesses has provided them.

33. On July 15, 2016, after being released on $12,000.00 bond, Plaintiff drove to Longwood Police Department Headquarters and requested to meet with the acting Chief of Police David Dowda. After waiving his Miranda rights and waiving his right to counsel, Plaintiff was instead interviewed by Lt. Kevin Shea. Plaintiff provided a 2 hour long statement detailing the entire circumstances surrounding Plaintiff's unlawful arrest the morning prior. Plaintiff explained the three(3) LPD officer's refusal to accept Plaintiff's criminal complaint against RAMOS, Rothenberg's fabrication of evidence, his omission of key exculpatory facts in the PCA, and his use of false statements in an attempt establish sufficient probable cause or

arguable probable cause to effectuate Plaintiff's unlawful arrest. Plaintiff informed Lt. Shea of Rothenberg, CPL Racine and Backup officer's refusals to interview over 15 eyewitnesses present at the scene, each had witnessed the entire series of the morning's events. Plaintiff complained about the officer's refusal to view the I-Pad security footage which contradicted both RAMOS' written statement and unequivocally contradicted and discredited Rothenberg's entire probable cause narrative.

34. Plaintiff brought with him to the LPD Headquarters the I-Pad containing the exculpatory video evidence to show the Police Chief, and in turn offered it to Lt Shea, who declined to review it. Lt. Shea appeared very concerned about what Plaintiff had relayed and assured Plaintiff he would look into the matter and that the charges would "go nowhere". Lt. Shea further requested that Plaintiff meet with Rothenberg, CPL Racine's supervisor SGT Kristopher Burnham on Monday July 18, 2016 and asked Plaintiff to relay the same information to SGT Burnham. Plaintiff agreed. Plaintiff learned during discovery that no audio or video record of the LT SHEA interview existed.

35. On July 18, 2016 Plaintiff again traveled to LPD Headquarters and this time met with SGT Burnham, waived his Miranda rights, waived his right to counsel, and gave a nearly 3+ hour long detailed statement, again describing in the exact same words each Officer's unlawful actions and intentional inactions. Plaintiff answered questions and explained the entire circumstances surrounding Plaintiff 's unlawful arrest on July 14, 2016. Once again Plaintiff brought with him to the LPD Headquarters the I-Pad containing the exculpatory security video (evidence) to show SGT Burnham, SGT Burnham declined to view it. Instead of evaluating the physical evidence SGT Burnham made various excuses for the Officers

actions, denied they had acted inappropriately and insisted it was all just a big misunderstanding that would probably go nowhere. Plaintiff learned during discovery that no audio or video record of the SGT Burnham interview existed.

36. With no further investigation, no witness interviews, no mention of Plaintiffs 6 hours of police interviews or his multiple offers to provide exculpatory video evidence to every level of the Longwood Police Department, LPD turned over the probable cause affidavit to the State Attorney Office for further criminal prosecution.

37. On October 11, 2016, after some 87 days of "investigation", the Office of the State Attorney for Seminole County filed and Information charging Plaintiff with Misdemeanor Battery F.S. 784.03 M-1 and Tampering with a Witness Victim or Informant 914.22(1) F-3.

38. On October 11, 2016 State's Attorney further dismissed the Plaintiff 's charges Robbery by Sudden Snatching F.S. 812.131(Third Degree Felony), Grand Theft F.S. 812.014(Third Degree Felony), for which he was initially and wrongfully arrested. Plaintiff 's bonds were subsequently discharged on October 12, 2016. Plaintiff 's continued requests for the basis justifying the grounds for dismissal have been continuously ignored.

39. On November 1, 2016 Plaintiff was arraigned on Misdemeanor Battery F.S. 784.03 M-1 and Tampering with a Witness Victim or Informant 914.22(1) F-3 by Honorable Judge Lester.

40. On November 4, 2016 at approximately 10:30am Plaintiff appeared again in front of Honorable Judge Lester, a *Feretta Inquiry* was conducted, the Court deemed Plaintiff capable of representing himself and allowed him to proceed *Pro Se*. The Court inquired into the possibility of future plea negotiations to resolve the case, to which Plaintiff bluntly informed both the Court and all Assistant State's Attorneys present, that under no

circumstances would Plaintiff be entertaining any type of plea offers, period. Furthermore Plaintiff explained he fully intended to exercise his right speedy trial, so the State should probably start preparing for a jury trial.

41. On November 4, 2016 at 4:26 pm, mere hours after Plaintiff notified the Court and State Attorneys Office of his intent to exercise both his right to Speedy Trial and to a trial by Jury, the State Attorney's Office filed an Amended Information re-adding on or re-filing the previously dismissed charge of Robbery by Sudden Snatching F.S. 812.131(Third Degree Felony) thus upping the felony level of Tampering with a Witness Victim or Informant 914.22(1) back to a Second Degree Felony.

42. On January 13, 2017 Plaintiff was finally arraigned on the charges filed in the November 4, 2016 Amended Information.

43. On January 17, 2017 Shortly before the scheduled trial date, at the beginning of the jury selection process, the State Attorney's Office announced to the Court that the State had elected to *nolle pross* all charges pending against Plaintiff. State provided no reason or explanation why the charges were abruptly dismissed, at jury selection, without prejudice.

44. On July 14 2016, when defendant Rothenberg arrived at the business location and met with the Plaintiff, Rothenberg was, at all times relevant, a law enforcement officer employed by the Longwood Police Department during which time he participated in the constitutional violations and other wrongful acts that occurred on July 14, 2016 and continued through January 17, 2017, at which time he was acting within the scope and course of his employment under color of state law. Defendant Rothenberg is also being sued in his individual capacity.

45. On July 14, 2016 Defendant Corporal Racine was a supervising Officer, employed by the Longwood Police Department's/Office. CPL RACINE willfully participated and played significant role in Plaintiff's wrongful arrest. CPL RACINE knowingly participated in the constitutional violations and other wrongful acts perpetrated against Plaintiff on July 14, 2016 and continued through January 17, 2017, at which time she was acting within the scope and course of her employment under color of State law. Defendant CPL RACINE is also being sued in her individual capacity.

## FALSE STATEMENTS CONTAINED WITHIN PROBABLE CAUSE AFFIDAVIT THAT IS DIRECTLY CONTRADICTED BY VIDEO EVIDENCE

46. Rothenberg, placing Ramos at that time inside of the office space, states *"Ramos stated that he told Boling he called the news and the corporate office and this made Boling very angry."* This statement is factually inaccurate and untrue, evidenced by iPad video security tape @ 9:27 thru 11:23. This statement was also contradicted by Mrs. Boling's statement of events that she provided to Rothenberg and Racine, by Jacob Boling's(office manager) statement when he was questioned by Rothenberg during the process of having RAMOS trespassed, by male witness ex-SLOAT employee James Laravuso's statement of events when questioned by Rothenberg. Each above witness statement matched the iPad video surveillance. As important is Rothenberg's PCA version differs from RAMOS' written victim statement.

47. Rothenberg, placing Ramos, at that time, inside of the office space, states *"Ramos stated he was then **inside the store** and Boling became enraged and began yelling at him so Ramos pulled out his Apple iPhone 6+ and stated that he was going to call the police"*(emphasis added). This statement is factually inaccurate and untrue, and NEVER occurred. The fact is RAMOS made neither a claim he was "going to" nor any attempt to dial 911 or "call the police" on either cell phone in his possession. This is evidenced by RAMOS' and Plaintiff's actions captured on iPad security tape video beginning @9:47. Rothenberg's statement was directly contradicted by Mrs. Boling's statement of events that she provided to Rothenberg and Racine(supported by iPad video), also by Jacob Boling's(office manager) statement when he was questioned by Rothenberg during the process of having RAMOS trespassed, and by ex-SLOAT employee James Laravuso's statement of events when questioned by Rothenberg. Each above witness statement matched the iPad video surveillance. On this point Rothenberg's PCA version differs substantially from RAMOS' written victim statement. In RAMOS' victim statement he never claims he informed the Plaintiff he "**was going to** call the Police"(Rothenberg's PCA version), meaning RAMOS was announcing a future act which Plaintiff could prevent him from taking. INSTEAD RAMOS' victim statement claims "He(Plaintiff) looked over at his wife after I told him **I was trying** to call the police", meaning RAMOS claimed he informed Plaintiff of his intent to call police only AFTER Plaintiff allegedly grabbed his phone. RAMOS' victim statement alone eliminated any probable cause or arguable probable cause basis for arresting Plaintiff for intentionally Preventing RAMOS from calling 911 during a robbery(a specific intent crime). The fact is,

none of RAMOS statement ever occurred, that evidence is uncontrovertibly memorialized on the iPad security video.

48. Rothenberg, placing Ramos at that time inside of the office space at the time of the alleged robbery, states "*Ramos stated that Boling then snatched the phone out of his hands and he hindered him from calling the police*" This statement is factually inaccurate and untrue, those events NEVER occurred, evidenced by RAMOS' and Plaintiff's actions captured on iPad through the security tape video until RAMOS exited the building before BOLING (security video @ 15:01), while still engaged in a cell phone call, with both of his cell phones in his possession. The iPad video further proves Plaintiff only exited the building for the first time (security video @ 16:08) with no cell phone at all in his possession, some 1 minute 7 seconds after RAMOS due to Plaintiff being summoned by his wife because of RAMOS taking pictures and making threats. Rothenberg's statement is also contradicted by Mrs. Boling's statement of events that she provided to Rothenberg and Racine(supported by iPad video), by Jacob Boling's(office manager) statement(supported by iPad video)when he was questioned by Rothenberg during the process of having RAMOS trespassed, by male witness ex-SLOAT employee James Laravuso's statement of events when questioned by Rothenberg. Each above witness statement matched the iPad video surveillance. As important, Rothenberg's version is also contradicted by RAMOS' written victim statement.

49. Rothenberg, placing Ramos at that time inside of the office space at the time of the alleged robbery, states "*Ramos stated that Boling then walked outside with the phone in his possession and Ramos was finally able to grab the phone out of his hands*" This statement is factually inaccurate and untrue, those events NEVER occurred, this is evidenced by

RAMOS' and Plaintiff's actions captured on iPad security tape video @12:52 showing RAMOS exiting the building (security video @ 15:01), while still engaged in a cell phone call, with both of his cell phones in his possession. The iPad video further proves Plaintiff sat back down and only exited the building for the first time (security video @ 16:08) with no cell phone at all in his possession. Some 1 minute 7 seconds after RAMOS exited the office Plaintiff was summoned by his wife because of RAMOS taking pictures and making threats. Rothenberg's statement is further contradicted by Plaintiff own response during a Rothenberg-Plaintiff dialogue that was captured on Plaintiff's iPhone audio recording @ 4:32, where Rothenberg asked Plaintiff if "he bumped or touched RAMOS" as RAMOS left the building, Plaintiff responded in the negative. Rothenberg's statement is also contradicted by Mrs. Boling's statement of events that she provided to Rothenberg and Racine(supported by iPad video), by Jacob Boling's(office manager) statement(supported by iPad video)when he was questioned by Rothenberg during the process of having RAMOS trespassed, by male witness ex-SLOAT employee James Laravuso's statement of events when questioned by Rothenberg. Each above witness statement matched the iPad video surveillance. As important, Rothenberg's version is also contradicted by RAMOS' written victim statement.

## INFORMATION AND EVIDENCE ROTHENBERG OMITTED FROM PROBABLE CAUSE AFFIDAVIT

50. Rothenberg intentionally omitted any reference to the three separate eyewitness statements he had solicited during his "on scene investigation". Both Rothenberg and Corporal Racine, asked each witness for photo ID, then questioned each witness (Mrs. Boling, Jacob Boling,

ex-SLOAT employee James Laravuso), Officers later returned their IDs with no further comment. Each of these witness's statements directly contradicted every allegation made by RAMOS, every claim set forth in RAMOS' victim statement, and contradicted virtually every statement contained in the Rothenberg probable cause affidavit. With no explanation provided, the three eyewitness statement were completely discarded! Each witness statement was independently corroborated by the iPad security video that was offered first to Rothenberg, and then to CPL RACINE, prior to Plaintiff's warrantless arrest.

51. Rothenberg intentionally omitted the fact that a minimum of 15 other potential witnesses, with no previous association to Plaintiff, were present throughout the entire event in question, yet none were questioned, interviewed, or even asked for a statement.

52. In crafting his narrative in the PCA, Rothenberg intentionally omitted portions, completely altered portions, and at times fabricated other portions of the PCA statement that he later attributed as statements made by the Plaintiff in regards to RAMOS.

53. RAMOS had, from his arrival on the premises and throughout the duration events and upon arrival of LPD Officers, in his physical possession, 2 separate, functioning, iPhones. Both phones are clearly visible throughout the entirety of the iPad security video. Furthermore RAMOS later indication to LPD which iPhone he alleged the Plaintiff robbed him of, so LPD could gather "evidence" off of it. RAMOS actually granted Officers access to review his cell phone call history and call logs while they were on the scene, this information was also omitted from PCA. The omission of this informations is very relevant, since LPD officers were made aware that RAMOS never placed a call to 911, nor had he attempted to place a call to 911, or even dialed the numbers 911, on either cell phone in his possession.

RAMOS' call log in fact revealed he had been talking on one of his cell phones for the duration of the alleged robbery. The relevance of this omission from the PCA is:

   a) Had RAMOS actually been the victim of a robbery, that deprived him of one of his two (2) cell phones, and Plaintiff had allegedly exited the building with one of RAMOS' phones, in an attempt to prevent RAMOS' 911 call, why didn't he simply utilize his other cell phone to call 911?

   b) In addition, since Plaintiff clearly saw RAMOS with 2 different cell phones, why would Plaintiff believe depriving him of only 1 of them would prevent a 911 call.

54. Upon Officers arrival on the scene Plaintiff explained to the LPD Officers that he had expected GOESELL to arrive much earlier, accompanied by LPD Officers, in order to avoid this type of scenario. Plaintiff explained to Rothenberg that he had already informed Ramos, some 10 min PRIOR to Jake Boling's 911 call, that Plaintiff had ALREADY CALLED Longwood police and they were ALREADY EN ROUTE to the office location, so that Plaintiff could file a criminal complaint against Ramos for violations of both Florida Statute 943.03.51(wire, oral, electronic communication) and Florida Statute 836.05(Extortion).

   a) The relevance of this omission is that LPD was informed by Plaintiff, Mrs. Boling, and Jake Boling that while RAMOS sat in the office he was under the belief that LPD officers had already been summoned and would be arriving any moment to potentially arrest him. This is supported by Plaintiff's oral statements informing RAMOS that "Longwood Police are already on their way" iPad video security tape @8:57, by RAMOS' own statements made during his cell phone call to unknown person, he states "he's(Plaintiff) threatening me with the Police" (security video

@13:24 )and "he's(Plaintiff) saying that Im going to get arrested" (security video @13:30), and by RAMOS statement to Mrs. Boling when she requested he wait outside(security video @12:02 )RAMOS stated that he was "going to wait on the Longwood Police to arrive", and again by RAMOS statement to Plaintiff when asked to leave the building(security video @14:11) where RAMOS stated "I'm going to wait on the Longwood Police". If the alleged victim was adamant he was waiting on the Longwood Police to arrive what would be his purpose in trying to call 911?

55. Rothenberg omitted the fact that even after RAMOS claimed he was "finally able to grab the phone out of his(Plaintiff's) hands" and instead of calling 911, or even attempting to call 911, RAMOS instead shot a 10 second video of Plaintiff walking back into the building and waited for Plaintiff to then call 911.

56. In summary, Rothenberg's intentional acts of omitting relevant information from the Probable Cause Affidavit altered the PCA to such a degree that the PCA language presented was in no way a representation of the true facts as they occurred. In turn Rothenberg's acts of introducing knowingly false information into the Probable Cause Affidavit, altered the PCA to such a degree that the PCA language presented was in no way representative of the true facts as they occurred. Plaintiff contends that without Rothenberg's omissions probable cause did not exist, and except for Rothenberg's interjection of falsehoods probable cause did not exist. When the omissions and falsehoods are combined only constitutional violations exist. Based on the actual facts of the incident as known to Rothenberg and CPL RACINE at the time of Plaintiff's warrantless arrest, neither probable cause nor arguable probable cause

existed to arrest Plaintiff. Thus Rothenberg's PCA omissions and falsehoods resulted in a violation of Plaintiff's Constitution Rights under the 4th Amendment.

## DEFENDANT'S DEMONSTRATED A WILLFUL FAILURE TO INVESTIGATE

57. From the time of Defendant Rothenberg's arrival and throughout the time leading up to Plaintiffs arrest and detention, Defendant's Rothenberg and CPL RACINE both unreasonably disregard certain pieces of evidence by choosing to ignore information that had been offered to him and her and further elected not to obtain easily discoverable facts, that might have tended to exculpate Plaintiff, or would further call into question the reliability, truthfulness or veracity of the alleged victim's recitation of events.

58. A minimum of 15 witnesses were present and witnessed the morning's events in question. No exigency prevented Rothenberg or CPL RACINE from questioning these persons, either before or after Defendants detained Plaintiff. There was no ongoing altercation, hostility or threat to the officers safety that would prevent reasonable investigation. At least two LPD Officers were on the scene for greater than 1 hour. Plaintiff had fully cooperated with responding officers as did each of the three witnesses the officers questioned. Plaintiff contends that Rothenberg and CPL RACINE intentionally elected not to take the following actions:

    a)  seek to obtain easily discoverable facts,

    b)  investigate evidence known to the officer or within the officer's field of vision

    c)  obtain statements from numerous witnesses that were present and readily available to provide statements as to what occurred during the alleged incident,

    d) review Plaintiff's iPad security video, that recorded the alleged incident, and was offered to both Rothenberg and CPL RACINE for viewing.

    e) acknowledge evidence provided to them that contradicted the evidence supporting the LPD officer's probable cause or arguable probable cause belief ,

    f) employ basic investigatory procedures that a reasonable officer would deem routine, customary or acceptable, while investigating allegations of a crime..

59. As a direct result of Defendant Rothenberg and CPL RACINE's intentional, reckless and malicious failures to act or investigate, in a reasonable or objective manner, as cited above, deprived Plaintiff of a right, privilege or immunity secured by the 4th Amendment of the Constitution or laws of the United States, and defendant's acts or omissions were done intentionally while acting under color of law.

60. If not for defendant's actions, Plaintiff would not have been subject to an unlawful arrest and detention, malicious prosecution, or suffered a deprivation of his liberty, rights, privilege or immunity secured by the 4th Amendment of the Constitution or laws of the United States.

61. As a direct result of Defendant Rothenberg and CPL RACINE's intentional actions, Plaintiff suffered significant, irreparable, and unwarranted physical, economical, and emotional harm to his personal and professional relationships, his reputation and quality of life. The extent of said harms have resulted in damages in excess of $10,000,000.00USD.

## COUNT I

### CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. § 1983
#### 4th Amendment Violations(Unlawful Detention and Malicious Prosecution Claims as to Rothenberg, RACINE, BURNHAM, SHEA, and DOWDA)

62. Plaintiff re-alleges and incorporate each jurisdictional and factual allegation contained in Paragraphs 1-61, as if set forth at length herein.

63. Rothenberg, in collusion with, collaboration with and/or with the cooperation of, CPL Racine under the direct supervision of SGT Burnham, LT SHEA and CHIEF DOWDA, acting on behalf of the LPD and the City of Longwood, did willfully, maliciously, and with specific intent to deprive Plaintiff of his liberty, omit relevant key facts from the probable cause affidavit, that LPD Officers were openly made aware of, prior to the making of the unlawful and warrantless arrest and further provided the probable cause affidavit that contained false information and omissions, to the State Attorney's Office to further the ongoing and unlawful prosecution of Plaintiff.

64. Defendants SGT Burnham and LT SHEA met with Plaintiff and were extensively briefed as to the circumstances leading up to, during and after Plaintiff's unlawful arrest and detention by Rothenberg and CPL RACINE. In both the SHEA and BURNHAM meetings, Plaintiff cited Defendants intentional, reckless and malicious failures to act or investigate in a reasonable or objective manner. Plaintiff cited Defendant's intentional acts of omitting relevant information from the Probable Cause Affidavit and their acts of introducing knowingly false information into the Probable Cause Affidavit in order to establish or justify probable cause to arrest Plaintiff. Plaintiff offered both BURNHAM and SHEA the opportunity to view the exculpatory video evidence Plaintiff brought with him, both declined. Defendants SHEA and BURNHAM took no corrective action, BURNHAM actually condoned and defended the Officer's illegal action. BURNHAM and SHEA oversaw and condone the transmittal of the probable cause affidavit containing false information and

omissions, to the State Attorney's Office with specific intent to Influence, or Participate in, the decision to assist in the further prosecution of Plaintiff.

65. Defendants acts of providing false information to prosecutors was intended to, and did, bear directly on prosecutors decision whether there was sufficient probable to proceed with the filing of formal charges against Plaintiff, thus directly causing, influencing or substantially affecting the State's decision to prosecute.

66. Defendant's could have reasonably foreseen that their actions would lead to the prosecutor bringing unwarranted charges against Plaintiff and effectively depriving Plaintiff of his liberty and his 4th Amendment right to be free of unlawful search and seizure which precipitated his malicious prosecution.

67. Defendant willfully ignored, disregarded and/or intentionally avoided numerous opportunities to cease, correct, or amend the prior wrongful acts of their subordinates after being made aware of the wrongful acts on multiple occasions and instead ratified those wrongful acts which resulted in violations of Plaintiffs rights and loss of liberty.

68. Defendant's intentional acts or omission deprived Plaintiff of a liberty, right, privilege or immunity secured by the 4th Amendment of the Constitution or laws of the United States, and defendant's acts or omissions were committed while acting under color of law.

69. If not for defendant's actions, Plaintiff would not have been subject to an unlawful search and seizure, unlaw arrest, malicious prosecution, or suffered a deprivation of his liberty, rights, privilege or immunity secured by the 4th Amendment of the Constitution or laws of the United States.

70. As a direct result of Defendants Rothenberg, CPL RACINE, SGT BURNHAM, LT SHEA, and CHEIF DOWDA's intentional actions, Plaintiff suffered significant, irreparable, and unwarranted physical, economical, and emotional harm to his personal and professional relationships, his reputation and quality of life. The extent of said harms have resulted in damages to Plaintiff in excess of $10,000,000.00USD.

## COUNT II

### CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. § 1983 4th, 5th and 14th Amendment Violations(Unlawful Detention and Malicious Prosecution and Due Process Claims as to the OFFICE OF THE STATE ATTORNEY SEMINOLE COUNTY, ASA HYATT, ASA FARMER, ASA CARTER)

71. Plaintiff re-alleges and incorporate each jurisdictional and factual allegation contained in Paragraphs 1-61, as if set forth at length herein.

72. On July 14, 2016 Plaintiff was arrested without probable cause or justifiable probable cause for Robbery by Sudden Snatching F.S. 812.131(Third Degree Felony), Grand Theft F.S. 812.014(Third Degree Felony), and Preventing a Victim from Calling 911 during commission of felony, a (Second Degree Felony) under F.S. 914.22 Obstructing Justice-Proceeding Tampering Intimidate Threaten Etc Witness Victim Informant.

73. On October 11, 2016, after completing some 87 days of "criminal investigation with the assistance from Longwood Police Department" the Office of the State Attorney (SAO), found insufficient probable cause to pursue formally charging Plaintiff with Robbery by Sudden Snatching F.S. 812.131(Third Degree Felony) or Grand Theft F.S. 812.014(Third Degree Felony) and Dismissed the charges and released Plaintiff's bonds.

74. On October 11, 2016 SAO instead filed an Information charging Plaintiff with: MISDEMEANOR BATTERY Florida Statute 784.03 M-1 and (1)TAMPERING WITH A WITNESS, VICTIM OR INFORMANT 914.22(1) F-3.

75. Plaintiff was subsequently arraigned on On November 1, 2016 for Misdemeanor Battery F.S. 784.03 M-1 and Tampering with a Witness Victim or Informant 914.22(1) F-3 by Honorable Judge Lester.. Plaintiff informed the Court he wished to proceed *Pro Se,* Court set a hearing to conduct a *Feretta Inquiry* for 10:30 am on November 4, 2016.

76. On November 4, 2016 at approximately 10:30am Plaintiff appeared again in front of Honorable Judge Lester, a *Feretta Inquiry* was conducted, the Court deemed Plaintiff capable of representing himself and allowed him to proceed *Pro Se.* The Court inquired into the possibility of future plea negotiations to resolve the case, to which Plaintiff bluntly informed both the Court and all Defendants ASA HYATT, ASA FARMER and ASA CARTER, that under no circumstances would Plaintiff be entertaining any type of plea offers, period. Furthermore Plaintiff explained he fully intended to exercise his right speedy trial, so the State should probably start preparing for a jury trial.

77. At 4:26pm, shortly after Court adjourned on November 4, 2016, mere hours after Plaintiff notified the Court and State Attorneys Office of his intent to forgo the plea process and exercise both his right to Speedy Trial and to right to demand a trial by Jury, the State Attorney's Office filed an Amended Information "picking up" the previously dismissed charge of Robbery by Sudden Snatching F.S. 812.131(Third Degree Felony) thus upping the felony level of Tampering with a Witness Victim or Informant 914.22(1) back to a Second Degree Felony after previously concluding that insufficient probable cause existed for the

Robbery charge and the evidence against Plaintiff justified only the lesser charge of Misdemeanor Battery for the same conduct. Defendant's actions demonstrate and establish a textbook case of malicious and vindictive prosecution and thus a violation of Plaintiff's protected Constitutional right to Due Process of Law, right to be free from unlawful detention and malicious prosecution.

78. Defendant's act of filing the more sever charges occurred IMMEDIATELY following the Feretta Hearing in which Plaintiff announced he was exercising his constitutionally protected rights, right to Speedy Trial and right to a Jury Trial. Plaintiff further stated he would be filing several pretrial motions and went on to further accused prosecutors of ongoing misconduct, discovery violations, and for furthering unlawfully pursuing Plaintiff's wrongful arrest. Plaintiff's accusatory and presumably offensive demeanor and comments directed toward prosecutors in open Court more than likely contributed to their retaliatory, vindictive and malicious acts.

79. No additional evidence was developed nor did any investigation occur between State's dismissal of the Robbery charge and substitution of a misdemeanor Battery in it's place, nor did any occur subsequent to Plaintiff's arraignment on the Battery and Tampering with Witness on November 1, 2016.

80. On November 2, 2016 Plaintiff was involved in a verbal altercation with LPD Officer Rothenberg at Liberty Law firm located across the street from the LPD Headquarters, in an unrelated matter. Rothenberg summoned supervisor SGT BURNHAM for backup. Plaintiff informed Rothenberg and SGT BURNHAM the false Robbery and Grand theft charges had been dismissed, BURNHAM instructed Plaintiff to stop mentioning he was falsely arrest

because it was upsetting "everyone here". Plaintiff is in possession of 30 minute audio tape of the entire interaction.

81. On November 16, 2016 Plaintiff filed "RODERIC BOLING'S MOTION DISMISS TO COUNT THREE(3) OF THE AMENDED INFORMATION, ROBBERY BY SUDDEN SNATCHING, DUE TO VINDICTIVE PROSECUTION BY THE STATE ATTORNEY'S OFFICE"

82. On January 13, 2017 Plaintiff was finally arraigned on the charges in the Amended Information filed on November 4, 2016.

83. Defendant's ignored substantial evidence of alleged victim RAMOS' extensive prior criminal history which included 2 arrests and convictions for (1)TAMPERING WITH A WITNESS, VICTIM OR INFORMANT 914.22(1) F-3 when he prevented a 2 separate domestic battery victims from calling 911 on her cell phone.

84. Defendant's also ignored RAMOS' 10 years of documented history, of over 20 prior acts of filing false criminal charges against individuals that had called police on RAMOS for his illegal activities in an attempt to avoid arrest. Not one of RAMOS 20+ false criminal claims resulted in prosecution of the accused, the ACTUAL victim of RAMOS, except of course Plaintiff's.

85. SAO Defendant's could have reasonably foreseen that their actions would lead to the prosecutor bringing unwarranted charges against Plaintiff and effectively depriving Plaintiff of his liberty and his 4th Amendment right to be free of unlawful search and seizure which precipitated his malicious prosecution.

86. SAO Defendants willfully ignored, disregarded and/or intentionally avoided numerous documented attempts by Plaintiff, a minimum of four by phone, four in person at the SAO Office, any others through Email and Court filings to provide exculpatory evidence, the iPad security video, to the SAO. SAO flatly refused to speak with, meet with or coordinate with Plaintiff to receive evidence vindicating Plaintiff.

87. SAO defendants instead increase the severity of Plaintiff's charges in revenge for Plaintiff exercising his Constitutionally protected rights, provided neither the Court nor the Plaintiff with any explanation nor justification of the meritless and wrongful acts as is required by on multiple occasions and instead ratified those wrongful acts which resulted in violations of Plaintiffs rights and loss of liberty.

88. To punish a person because he has done what the law plainly allows him to do is a clear process violation of the most basic sort and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.

89. If not for defendant's actions, Plaintiff would not have been subject to significantly more sever punishment, malicious prosecution, or suffered a deprivation of his liberty, rights, privilege or immunity secured by the 4th, 5th and 14th Amendments of the Constitution or laws of the United States.

90. As a direct result of Defendants Defendants ASA HYATT, ASA FARMER and ASA CARTER's intentional actions, Plaintiff suffered significant, irreparable, and unwarranted physical, economical, and emotional harm to his personal and professional relationships, his

reputation and quality of life. The extent of said harms have resulted in damages to Plaintiff in excess of $10,000,000.00USD.

## STATE LAW CLAIMS

91. As to each cause of action delineated below in Counts Three through Six, Plaintiff advances his federal constitutional claims against the governmental entities and law enforcement officers, as state actors, through the operation of the Fourth and Fourteenth Amendment.

## COUNT THREE
### *Monell* Claim - Official Policies Resulting in Unlawful Seizure
### (42 USC § 1983 – Violation of Fourth Amendment)

92. Plaintiff re-alleges and incorporate each jurisdictional and factual allegation contained in Paragraphs 1-61, as if set forth at length herein.

93. *Monell* claim for "failing to investigate citizen complaints and abdicated its responsibility to train, supervise, discipline, and control its officers." Plaintiff's complaint provides concrete examples of acts of omission and falsehood in preparation of probable cause affidavit and other incidents supporting Plaintiff's claim of "failing to investigate citizen complaints and abdicated its responsibility to train, supervise, discipline, and control its officers."

94. At all times relevant hereto, DOWDA was the final policymaker for Longwood Police Department Longwood Police for purposes of adopting law enforcement policies concerning the filing of a PCA for purposes of conducting a warranties arrest without violation of a citizen's Fourth and Fourteenth Amendment rights.

95. LPD defendant's acts of omission and falsehood in preparation of probable cause affidavit were done to provide a pretext for LPD to unlawfully arrested Plaintiff in violation of

Plaintiff s' Fourth Amendment rights without factual basis, legal justification, probable cause or arguable probable cause.

96. The actions of LPD officers reflected the formulation and implementation of LPD policy, and informal agreements between LPD and its Officers in a fashion which proximately caused the deprivation of Fourth and Fourteenth Amendment rights of the Plaintiff.

97. Accordingly, the LPD policies were the moving force behind the deprivation of the Plaintiff's constitutional rights and the proximate cause of the damages arising therefrom.

<u>**COUNT FOUR**</u>
**42 U.S.C. § 1983 – FOURTH AMENDMENT CLAIM (Malicious Prosecution Claim against DOWDA and the LONGWOOD POLICE DEPARTMENT)**

98. Plaintiff re-alleges and incorporate each jurisdictional and factual allegation contained  in Paragraphs 1-61, as if set forth at length herein.

99. Defendant DOWDA ratified the actions and decisions of defendants Rothenberg, CPL RACINE, SGT BURNHAM and LT SHEA concerning all law enforcement activities related to Plaintiff 's unlawful arrest on July 14, 2016 and to defendant's continuing willful and malicious influencing of the SAO's decision to pursue prosecution of Plaintiff.

100. Defendant DOWDA approved of and ratified defendants Rothenberg, CPL RACINE, and SGT BURNHAM and LT SHEA'S decisions in executing the law enforcement operations and policies related to violating Plaintiff's Fourth and Fourteenth Amendment rights.

101. Defendant DOWDA had the opportunity to review defendant Rothenberg, CPL RACINE and SGT BURNHAM's and LT SHEA'S decisions through formal and informal channels, evidenced through copies of email communications he directly participated in concerning the circumstances and status of Plaintiff 's unlawful arrest. DOWDA expressed his agreement

with the actions taken and the basis for such actions through written email approval of the LPD officers' actions taken during Plaintiff 's unlawful arrest, unlawful detainment and malicious prosecution

102. The policies of defendant DOWDA, based upon the ratification of defendants Rothenberg, CPL RACINE, and SGT BURNHAM and LT SHEA'S actions at issue, violated Plaintiff's Fourth Amendment rights to be free from Malicious prosecution.

103. The ratification of the actions taken by defendants Rothenberg, CPL RACINE and SGT BURNHAM's and LT SHEA, pursuant to LPD policies, led to the implementation of these policy agreements by the LPD which proximately caused the deprivation of Fourth Amendment right of Plaintiff.

104. Accordingly, LPD policies were the moving force behind the deprivation of the Plaintiff S' constitutional rights and the proximate cause of the damages arising therefrom.

## COUNT FIVE
### Monell Claim – Official Policies Resulting in Unlawful Seizure by Ratification of Final Policymakers (42 U.S.C. § 1983 - FOURTEENTH AMENDMENT CLAIM against DOWDA and Longwood Police Department)

105. Plaintiff re-alleges and incorporate each jurisdictional and factual allegation contained in Paragraphs 1-61, as if set forth at length herein..

106. Defendant DOWDA ratified the actions and decisions of defendants Defendants Rothenberg, CPL RACINE, and SGT BURNHAM concerning all law enforcement operations related to the 81. Defendant DOWDA had the opportunity to review defendant Rothenberg, CPL RACINE, and SGT BURNHAM's decisions through formal and informal channels and

expressed their agreement with the actions taken and the basis for such actions through their approval and.

107. The policies of defendant DOWDA, based upon the ratification of defendants Rothenberg, CPL RACINE, and SGT BURNHAM's actions at issue, violated Plaintiff's Fourteenth Amendment right to due process to be free from unlawful and unreasonable search and seizure without probable cause, arguable probable cause or reasonable suspicion.

108. The ratification of the actions taken by defendants Rothenberg, CPL RACINE, and SGT BURNHAM, pursuant to LPD policies, led to the implementation of these policy agreements by the LPD which proximately caused the deprivation of Fourteenth Amendment right of Plaintiff in 2016.

109. As a consequence of the LPD's ratification of the actions taken by defendants, based upon the LPD's policies, Plaintiff suffered violations of his Fourth Amendment rights to be free from unreasonable and unjustified search and seizure. Plaintiff remains reluctant to call for police assistance, and/or does so with fear and apprehension that he will, again, be subject to similar unlawful acts by defendants done with no lawful basis and malicious intent.

110. Accordingly, the LPD policies were the moving force behind the deprivation of the Plaintiff's constitutional rights and the proximate cause of the damages arising therefrom.

## COUNT SIX

### CLAIMS UNDER 42 U.S.C. § 1983 4th, 5th and 14th Amendment Violations(Unlawful Detention and Malicious Prosecution and Due Process Claims as to the OFFICE OF THE STATE ATTORNEY SEMINOLE COUNTY, ASA HYATT, ASA FARMER, ASA CARTER)

111. Plaintiff re-alleges and incorporate each jurisdictional and factual allegation contained in Paragraphs 1-61, as if set forth at length herein.

112. On July 14, 2016 Plaintiff was arrested without probable cause or justifiable probable cause for Robbery by Sudden Snatching F.S. 812.131(Third Degree Felony), Grand Theft F.S. 812.014(Third Degree Felony), and Preventing a Victim from Calling 911 during commission of felony, a (Second Degree Felony) under F.S. 914.22 Obstructing Justice-Proceeding Tampering Intimidate Threaten Etc Witness Victim Informant.

113. On October 11, 2016, after completing some 87 days of "criminal investigation with the assistance from Longwood Police Department" the Office of the State Attorney (SAO), found insufficient probable cause to pursue formally charging Plaintiff with Robbery by Sudden Snatching F.S. 812.131(Third Degree Felony) or Grand Theft F.S. 812.014(Third Degree Felony) and Dismissed the charges and released Plaintiff's bonds.

114. On October 11, 2016 SAO instead filed an Information charging Plaintiff with: MISDEMEANOR BATTERY Florida Statute 784.03 M-1 and (1)TAMPERING WITH A WITNESS, VICTIM OR INFORMANT 914.22(1) F-3.

115. Plaintiff was subsequently arraigned on On November 1, 2016 for Misdemeanor Battery F.S. 784.03 M-1 and Tampering with a Witness Victim or Informant 914.22(1) F-3 by Honorable Judge Lester.. Plaintiff informed the Court he wished to proceed *Pro Se*, Court set a hearing to conduct a *Feretta Inquiry* for 10:30 am on November 4, 2016.

116. On November 4, 2016 at approximately 10:30am Plaintiff appeared again in front of Honorable Judge Lester, a *Feretta Inquiry* was conducted, the Court deemed Plaintiff capable of representing himself and allowed him to proceed *Pro Se*. The Court inquired into

the possibility of future plea negotiations to resolve the case, to which Plaintiff bluntly informed both the Court and all Defendants ASA HYATT, ASA FARMER and ASA CARTER, that under no circumstances would Plaintiff be entertaining any type of plea offers, period. Furthermore Plaintiff explained he fully intended to exercise his right speedy trial, so the State should probably start preparing for a jury trial.

117. At 4:26pm, shortly after Court adjourned on November 4, 2016, mere hours after Plaintiff notified the Court and State Attorneys Office of his intent to forgo the plea process and exercise both his right to Speedy Trial and to right to demand a trial by Jury, the State Attorney's Office filed an Amended Information "picking up" the previously dismissed charge of Robbery by Sudden Snatching F.S. 812.131(Third Degree Felony) thus upping the felony level of Tampering with a Witness Victim or Informant 914.22(1) back to a Second Degree Felony after previously concluding that insufficient probable cause existed for the Robbery charge and the evidence against Plaintiff justified only the lesser charge of Misdemeanor Battery for the same conduct. Defendant's actions demonstrate and establish a textbook case of malicious and vindictive prosecution and thus a violation of Plaintiff's protected Constitutional right to Due Process of Law, right to be free from unlawful detention and malicious prosecution.

118. Defendant's act of filing the more sever charges occurred IMMEDIATELY following the Feretta Hearing in which Plaintiff announced he was exercising his constitutionally protected rights, right to Speedy Trial and right to a Jury Trial. Plaintiff further stated he would be filing several pretrial motions and went on to further accused prosecutors of ongoing misconduct, discovery violations, and for furthering unlawfully pursuing Plaintiff's wrongful

arrest. Plaintiff's accusatory and presumably offensive demeanor and comments directed toward prosecutors in open Court more than likely contributed to their retaliatory, vindictive and malicious acts.

119. No additional evidence was developed nor did any investigation occur between State's dismissal of the Robbery charge and substitution of a misdemeanor Battery in it's place, nor did any occur subsequent to Plaintiff's arraignment on the Battery and Tampering with Witness on November 1, 2016.

120. On November 2, 2016 Plaintiff was involved in a verbal altercation with LPD Officer Rothenberg at Liberty Law firm located across the street from the LPD Headquarters, in an unrelated matter. Rothenberg summoned supervisor SGT BURNHAM for backup. Plaintiff informed Rothenberg and SGT BURNHAM the false Robbery and Grand theft charges had been dismissed, BURNHAM instructed Plaintiff to stop mentioning he was falsely arrest because it was upsetting "everyone here". Plaintiff is in possession of 30 minute audio tape of the entire interaction.

121. On November 16, 2016 Plaintiff filed "RODERIC BOLING'S MOTION DISMISS TO COUNT THREE(3) OF THE AMENDED INFORMATION, ROBBERY BY SUDDEN SNATCHING, DUE TO VINDICTIVE PROSECUTION BY THE STATE ATTORNEY'S OFFICE"

122. On January 13, 2017 Plaintiff was finally arraigned on the charges in the Amended Information filed on November 4, 2016.

123. Defendant's ignored substantial evidence of alleged victim RAMOS' extensive prior criminal history which included 2 arrests and convictions for (1)TAMPERING WITH A

WITNESS, VICTIM OR INFORMANT 914.22(1) F-3 when he prevented a 2 separate domestic battery victims from calling 911 on her cell phone.

124. Defendant's also ignored RAMOS' 10 years of documented history, of over 20 prior acts of filing false criminal charges against individuals that had called police on RAMOS for his illegal activities in an attempt to avoid arrest. Not one of RAMOS 20+ false criminal claims resulted in prosecution of the accused, the ACTUAL victim of RAMOS, except of course Plaintiff's.

125. SAO Defendant's could have reasonably foreseen that their actions would lead to the prosecutor bringing unwarranted charges against Plaintiff and effectively depriving Plaintiff of his liberty and his 4th Amendment right to be free of unlawful search and seizure which precipitated his malicious prosecution.

126. SAO Defendants willfully ignored, disregarded and/or intentionally avoided numerous documented attempts by Plaintiff, a minimum of four by phone, four in person at the SAO Office, any others through  Email and Court filings to provide exculpatory evidence, the iPad security video, to the SAO. SAO flatly refused to speak with, meet with or coordinate with Plaintiff to receive evidence vindicating Plaintiff.

127. SAO defendants instead increase the severity of Plaintiff's charges in revenge for Plaintiff exercising his Constitutionally protected rights, provided neither the Court nor the Plaintiff with any explanation nor justification of the meritless and wrongful acts as is required by on multiple occasions and instead ratified those wrongful acts which resulted in violations of Plaintiffs rights and loss of liberty.

128. To punish a person because he has done what the law plainly allows him to do is a clear process violation of the most basic sort and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.

129. If not for defendant's actions, Plaintiff would not have been subject to significantly more sever punishment, malicious prosecution, or suffered a deprivation of his liberty, rights, privilege or immunity secured by the 4th, 5th and 14th Amendments of the Constitution or laws of the United States.

130. As a direct result of Defendants Defendants ASA HYATT, ASA FARMER and ASA CARTER's intentional actions, Plaintiff suffered significant, irreparable, and unwarranted physical, economical, and emotional harm to his personal and professional relationships, his reputation and quality of life. The extent of said harms have resulted in damages to Plaintiff in excess of $10,000,000.00USD.

## COUNT SEVEN
### Conspiracy to Violate Civil Rights (42 USC § 1983 – Violation of Fourth and Amendments against Longwood Police Department, Dowda, Rothenberg, RACINE, BURNHAM, and SHEA)

131. Plaintiff re-alleges and incorporate each jurisdictional and factual allegation contained  in Paragraphs 1-61, as if set forth at length herein.

132. Defendants DOWDA, Rothenberg, CPL RACINE, and SGT BURNHAM and LT SHEA, had an unwritten agreement to proceed with unsubstantiated arrest and recommendations for continuing prosecution of Plaintiff.

133. The agreement between these Defendants was implemented on July 14, 2016, and continued to be implemented through January 17, 2017 when Defendants Rothenberg, CPL RACINE, and SGT BURNHAM and LT SHEA concocted a series of circumstances in an attempt to justify the arrest of Plaintiff and thereby subject Plaintiff to unreasonable seizure in violation of the Fourth Amendment, even though the Defendants knew that no factual basis existed and no legal justification, probable cause or arguable probable cause existed for Plaintiff's arrest. Defendants then knowingly took actions to cover up the unlawful acts in furtherance of the conspiracy in an attempt to avoid exposure or detection of the unlawful acts.

134. This conspiracy was the proximate cause of the deprivation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure and malicious prosecution.

## PRAYER FOR RELIEF

Counts 1 through 7:

WHEREFORE, Plaintiff s seek judgment against Defendant(s) for the following relief:

Compensatory Damages; $10,000,000

Punitive Damages; $10,000,000

Costs of Suit;

Attorneys' Fees pursuant to 42 USC § 1988;

Further Relief as this court deems just and proper.


Respectfully Submitted,

RODERIC BOLING
Plaintiff, PRO SE
3408 Foxmeadow Ct
Longwood FL 32779
(407) 920-4590
RoddyBoling@gmail.com

## CERTIFICATE OF GOOD FAITH

I, RODERIC LEE BOLING, proceeding pro se, HEREBY CERTIFY, as both the Defendant and counsel of record, that the assertions contained in this motion and any statements made herein are made in good faith.

RODERIC BOLING

STATE OF FLORIDA
COUNTY OF SEMINOLE

BEFORE ME, on the _19TH_ day of January, 2021, personally appeared RODERIC BOLING, who after being duly sworn, states that he is the Defendant in the above styled cause and has personal knowledge of the matters stated herein, and swears that the matters set forth therein are true and correct.

[X] PRODUCED IDENTIFICATION

NOTARY PUBLIC

Notary Public State of Florida
Adison Lee Guenther
My Commission HH 001588
Expires 05/19/2024

Roderic Lee Boling
RODERIC BOLING
Plaintiff, PRO SE
3408 Foxmeadow Ct
Longwood FL 32779
(407) 920-4590
RoddyBoling@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of January 2021, a true and correct copy of the foregoing was filed with the Clerk of District Court for Middle District of Florida, with copies to the Office of the State Attorney, in and for Seminole County, Florida and the Longwood Police Department.

RODERIC BOLING
Plaintiff, PRO SE
3408 Foxmeadow Ct
Longwood FL 32779
(407) 920-4590
RoddyBoling@gmail.com