**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RODERIC BOLING,

        Plaintiff,

v.                                                       Case No: 6:21-cv-129-WWB-LRH

CITY OF LONGWOOD,
LONGWOOD POLICE
DEPARTMENT, MASON
ROTHENBURG, B. RACINE,
KRISTOPHER BURNAM, SHEA
LIEUTENANT, DAVID DOWDA,
OFFICE OF THE STATE ATTORNEY
SEMINOLE COUNTY, MARCUS
HYATT, RICHARD FARMER and
JAMES CARTER,

        Defendants.

_____

**AMENDED[1] REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the following

motions filed herein:

---

    [1] The undersigned initially issued a Report and Recommendation in this matter on November 10, 2021.  Doc. No. 27.  Upon consideration of Plaintiff's objections (Doc. No. 28) and with the consent of the presiding District Judge, that Report and Recommendation was withdrawn.  *See* Doc. No. 31.  This Amended Report and Recommendation follows, and it supersedes the prior Report (Doc. No. 27) in all respects.

| | |
|---|---|
| **MOTION:** | **STATE ATTORNEY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE (Doc. No. 16)** |
| **FILED:** | **June 19, 2021** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

| | |
|---|---|
| **MOTION:** | **DEFENDANTS', CITY OF LONGWOOD, LONGWOOD POLICE DEPARTMENT, LONGWOOD CHIEF OF POLICE DAVID DOWDA, MOTION TO DISMISS (Doc. No. 22)** |
| **FILED:** | **July 13, 2021** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

| | |
|---|---|
| **MOTION:** | **DEFENDANTS', OFC. MASON ROTHENBURG, OFC. CORPORAL B. RACINE, OFC SGT. KRISTOPHER BURNAM, LT. SHEA LIEUTENANT, MOTION TO DISMISS (Doc. No. 23)** |
| **FILED:** | **July 13, 2021** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

## I.   INTRODUCTION.

On January 19, 2021, Plaintiff Roderic Boling, appearing *pro se*, instituted this action against the above-named Defendants.   Doc. No. 1.   Plaintiff asserts claims

pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth, Fifth, and Fourteenth Amendments in relation to an altercation that took place on July 14, 2016, after which Plaintiff was arrested and charged with several felonies.  *Id.* ¶¶ 14–32.  The charges were ultimately *nolle prossed*.  *Id.* ¶ 43.  Plaintiff's claims are against several officers of the Longwood Police Department (Mason Rothenberg, B. Racine, Kristopher Burnam, and Shea Lieutenant)[2]; the Longwood Chief of Police David Dowda ("Chief Dowda"); the City of Longwood ("the City") the Longwood Police Department ("the LPD"); the Office of the State Attorney of Seminole County; and three assistant state attorneys (Marcus Hyatt, Richard Farmer, James Carter). *Id.* at 25–42.  The individual Defendants are sued in both their individual and official capacities.  *Id.* at 1, 5, 16, 17.

With the exception of Marcus Hyatt, each of the Defendants has appeared through counsel in this case.[3]  Each of the Defendants who have appeared filed

_____

[2] Although the style of this case and the complaint include "Shea Lieutenant" as a Defendant, Plaintiff refers throughout the complaint to "Lieutenant Kevin Shea," "Lt. Kevin Shea," "Lieutenant Shea," "Lt Shea" or "Shea."  *See* Doc. No. 1.  For the sake of clarity and consistency, this Report hereafter refers to this Defendant as "Shea."  Likewise, the style of this case includes "Mason Rothenburg" as a Defendant, whose name is consistently spelled "Mason Rothenberg" throughout the complaint.  Therefore, this Defendant is referred to as "Rothenberg."  There are also two different spellings for Defendant "Kristopher Burnam," *i.e.*, Burnam or Burnham, and for consistency this Defendant will be referred to as "Burnam."

[3] On October 26, 2021, the Court issued an Order to Show Cause directing Plaintiff to show cause on or before November 9, 2021 why the complaint against Defendant Hyatt should not be dismissed.  Plaintiff failed to timely respond to that Order to Show Cause, and the Court has since dismissed Defendant Hyatt as a Defendant in this matter pursuant

motions to dismiss the complaint.   Doc. Nos. 7, 8, 16.   The motions to dismiss were referred to the undersigned.

Plaintiff did not timely respond to any of the motions to dismiss.   As it relates to the motions filed by the City, the LPD, and the officers thereof (Doc. Nos. 7, 8), it did not appear that such motions were properly served on Plaintiff, and these Defendants failed to demonstrate otherwise.   *See* Doc. Nos. 17–21. [4] Accordingly, the undersigned entered an Order striking those motions and ordered the movants to refile the motions to include certificates of service demonstrating that the motions were properly served on Plaintiff.   Doc. No. 21.   The undersigned further ordered that the renewed motions be served on Plaintiff via certified mail. *Id.* at 3.   These Defendants have renewed their motions, to include proper certificates of service, and they have filed a certificate of compliance stating that the motions were served on Plaintiff via certified mail.   Doc. Nos. 22–25. [5] Nonetheless, Plaintiff did not respond to any of the pending motions to dismiss (Doc. Nos. 16, 22, 23), and the time for doing so has long since passed.   *See* Local

---

to Fed. R. Civ. P. 4(m).   *See* Doc. No. 29.   Thus, this Report does not further address the claims asserted in the complaint against Defendant Hyatt.

[4] The remaining motion to dismiss filed by the Office of the State Attorney for Seminole County, and Assistant State Attorneys Richard Farmer and James Carter (Doc. No. 16) contains a certificate of service stating that it was properly served on Plaintiff.

[5] The certified mail return receipt states that it was received by "Boling" on July 16, 2021.   Doc. No. 25, at 3.

Rule 3.01(c). Accordingly, the motions to dismiss have all been considered unopposed. *See id.*

## II.    SUMMARY OF ALLEGATIONS OF THE COMPLAINT.[6]

According to the complaint, Plaintiff's claims stem from encounters between Plaintiff and a person named Elmo Ramos in July 2016, at Plaintiff's then-wife's newly acquired place of business. Doc. No. 1 ¶ 9. Ramos was previously employed by the company that formerly operated at the same address. *Id.* Ramos tried to get Plaintiff to pay him for backpay owed by his previous employer, and made threats to or about Plaintiff in this regard. *Id.* ¶¶ 10–13.

On July 14, 2016, Plaintiff's then-wife was apparently going to pay employees of the prior company their owed backpay. *Id.* ¶¶ 13–15. Approximately fifteen to twenty people were at the place of business that day, some were there seeking employment with Plaintiff's then-wife, some were there seeking said backpay from their previous employment. *Id.* ¶ 14. That day, Plaintiff had a conversation with Ramos, who at the time possessed two cellphones, which he used to illegally record Plaintiff and/or Plaintiff's vehicle. *Id.* ¶¶ 18–20. Police were called, and when Officer Rothenberg arrived, Plaintiff requested that Ramos be trespassed. *Id.* ¶ 23.

---

[6] At the motion to dismiss stage, courts must assume "that all the [factual] allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007*)* (citations omitted).

Officer Rothenberg refused to take a criminal complaint from Plaintiff regarding the illegal recording and refused to interview several witnesses. *Id.* ¶ 24. Backup officers arrived, who suggested that Plaintiff simply pay Ramos, but Plaintiff refused. *Id.* ¶¶ 27–30.

After conversing with Ramos, the officers arrested Plaintiff with no explanation and charged him with robbery by sudden snatching (third-degree felony); grand theft (third-degree felony); and obstruction of justice/preventing a victim from calling 911 during the commission of a felony (second-degree felony). *Id.* ¶ 31. According to the complaint, as well as the officers' probable cause affidavit referenced therein and the victim's (Ramos's) statements, Plaintiff was arrested for allegedly taking Ramos's iPhone out of his possession and obstructing Ramos's efforts to call 911. *E.g., id.* ¶¶ 46–49, 53.

Plaintiff was released on bond. *Id.* ¶ 33. After his release, Plaintiff attempted to meet with police to provide exculpatory evidence, such as iPad security footage of the incident, to no avail. *Id.* ¶¶ 33–35. The LPD provided a probable cause affidavit to the Office of the State Attorney for Seminole County, which thereafter charged Plaintiff with misdemeanor battery and tampering with a witness victim or informant. *Id.* ¶ 37. On October 11, 2016, the Office of the State Attorney dismissed the robbery by sudden snatching and grand theft charges. *Id.* ¶ 38. However, the Office of the State Attorney later revived the robbery by

sudden snatching charge by filing an amended information, which also included the felony-level tampering charge. *Id.* ¶ 41. Thereafter, shortly before the scheduled trial date, the Office of the State Attorney elected to *nolle prosse* all of the charges against Plaintiff. *Id.* ¶ 43.

Plaintiff claims that the officers' probable cause affidavit contains several false statements, including an allegation by Ramos that Plaintiff "snatched" Ramos's cellphone out of his hands, thus hindering him from calling the police. *Id.* ¶¶ 46–49. Plaintiff claims that officers also omitted information and evidence from the probable cause affidavit. *Id.* ¶¶ 50–56. Plaintiff further contends that the officers failed to adequately investigate at the scene. *Id.* ¶¶ 57–61.

## III. ANALYSIS.

### A. State Attorney Defendants' Motion to Dismiss (Doc. No. 16).

Plaintiff alleges "Claims Under 42 U.S.C. § 1983, 4th, 5th, and 14th Amendment Violations (Unlawful Detention and Malicious Prosecution and Due Process Claims . . .) against the Office of the State Attorney for Seminole County, as well as Assistant State Attorneys Marcus Hyatt, Richard Farmer, and James Carter. Doc. No. 1, at 28, 36 (Complaint Counts II & VI). Thus, from the complaint, it appears that Plaintiff asserts two central claims against the Office of the State Attorney and Defendants Farmer and Carter (hereinafter, collectively the "State

Attorney Defendants") under § 1983: malicious prosecution and false arrest/false imprisonment.  *Id.*

"To establish a claim of malicious prosecution under § 1983, a plaintiff must prove a violation of his Fourth Amendment right to be free from an unreasonable seizure in addition to establishing the elements of the common-law tort of malicious prosecution."  *Damali v. City of E. Point*, 766 F. App'x 825, 827 (11th Cir. 2019) (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).[7]  "These elements include (1) a criminal prosecution instituted or continued by the present defendant, (2) with malice and without probable cause, (3) that terminated in the plaintiff's favor, and (4) that caused damage to the plaintiff accused."  *Id.*

As to Plaintiff's false arrest/false imprisonment claims, "[t]o state a claim for false arrest under § 1983, a plaintiff must show that he was arrested without probable cause or a warrant."  *Topa v. Kerbs*, No. 2:18-cv-475-FtM-38MRM, 2018 WL 4698462, at *2 (M.D. Fla. Oct. 1, 2018) (citing *Andrews v. Scott*, 729 F. App'x 804, 808 (11th Cir. 2018); *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)).  "A detention on the basis of a false arrest presents a viable section 1983 action."  *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996).  Moreover, "[w]here a police officer lacks probable cause to make an arrest, the arrestee has a

---

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Id.*   However, probable cause is a complete defense to false arrest and false imprisonment claims under § 1983.   *Id.*

The State Attorney Defendants move to dismiss the complaint on several bases, including: (1) prosecutorial immunity; (2) sovereign immunity; (3) qualified immunity; (4) Eleventh Amendment immunity; (5) failure to state a claim; and (6) failure to comply with pleading requirements.   Doc. No. 16.[8]   On review, the issues of prosecutorial immunity and Eleventh Amendment immunity are dispositive of the State Attorney Defendants' motion.   Accordingly, these are the only issues I address.[9]

### 1.   *Prosecutorial Immunity.*

As it relates to the claims against Defendants Farmer and Carter, they are entitled to absolute prosecutorial immunity on such claims.   *See Rivera v. Leal*, 359

---

[8] Insofar as the State Attorney Defendants argue that Plaintiff has failed to comply with federal pleading requirements, they simply incorporate the arguments made by the City, the LPD, and Chief Dowda regarding same.   *See* Doc. No. 22.   Accordingly, that argument is addressed *infra* with regard to the motion to dismiss filed by those Defendants. *See id.*

[9] Given the dispositive nature of the arguments regarding prosecutorial and Eleventh Amendment immunity, I have not addressed the State Attorney Defendants' remaining arguments in this Report related to qualified immunity, sovereign immunity, or failure to state a claim.   *See* Doc. No. 16, at 11; *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("A prosecutor is absolutely immune from suit for malicious prosecution."). However, should the Court decline to accept my recommendations regarding prosecutorial and Eleventh Amendment immunity, I respectfully suggest that the Court refer the motion back to me for further consideration of the remaining legal arguments.

F.3d 1350, 1353–54 (11th Cir. 2004) (explaining that prosecutors are entitled to absolute immunity for their acts or omissions taken in the course of initiating a prosecution); *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("A prosecutor is absolutely immune from suit for malicious prosecution." (citing *Malley v. Briggs*, 475 U.S. 335, 342–43 (1986))); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Prosecutors have absolute immunity from civil damages suits under section 1983 for actions intimately associated with the judicial phase of the criminal process." (citing *Fullman v. Graddick,* 739 F.2d 553, 558 (11th Cir. 1984))).

Here, Plaintiff alleges that the State Attorney Defendants led, participated in, or oversaw the malicious prosecution of Plaintiff's criminal case.   Doc. No. 1, at 6–7.   Specifically, in Counts II and VI, Plaintiff alleges that he was arrested without probable cause for robbery by sudden snatching (third-degree felony); grand theft (third-degree felony) and preventing a victim from calling 911 during the commission of a felony (second-degree felony).   *Id.* at 28, 36–37.   Plaintiff alleges that after investigation, the Office of the State Attorney found insufficient probable cause for the robbery by sudden snatching and grand theft charges, instead charging him with misdemeanor battery and tampering with a witness.   *Id.* at 28–29.   After a *Faretta* inquiry and determination that Plaintiff could proceed *pro se*, the State Attorney's Office filed an amended information re-adding the robbery by sudden snatching charge, and "upping the felony level" of the tampering charge.

*Id.* at 29. However, the Office of the State Attorney ultimately *nolle prossed* all charges against Plaintiff. *See id.* ¶ 43.

Plaintiff claims that the State Attorney Defendants violated his rights by ignoring Plaintiff's requests for justification regarding dismissal of one of the charges; filing an amended information re-adding a charge previously dismissed; dismissing the charges against him without explanation; ignoring "substantial evidence" of the alleged victim's prior criminal history; and ignoring/disregarding/avoiding "numerous documented attempts by Plaintiff . . . to provide exculpatory evidence." *See id.* ¶¶ 36–38, 41, 43, 71–90, 111–30.

Because each of the allegations relate to the State Attorney Defendants' roles "in initiating a prosecution and in presenting the State's case," they are "immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Elder v. Athens-Clarke Cnty., Ga.*, 54 F.3d 694, 695 (11th Cir. 1995) (prosecutor immune to suit for damages unless the acts or omissions giving rise to the claims are outside the "scope and territorial jurisdiction of his office."). *See also Hoffman v. Off. of State Att'y, Fourth Jud. Cir.*, 793 F. App'x 945, 950 (11th Cir. 2019) (citations and internal quotation marks omitted) (alterations in original) (state attorneys entitled to absolute immunity when sued in both official and individual capacities; absolute prosecutorial immunity applies to prosecutorial functions, including "the initiation and pursuit of a criminal prosecution, the presentation of the state's case,

and other actions that are intimately associated with the judicial phase of the criminal process, such as court appearances," and "[p]rosecutorial immunity extends to filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, . . . [and] threatening . . . further criminal prosecutions."); *Smith v. Shorstein*, 217 F. App'x 877, 880 (11th Cir. 2007) ("[A] prosecutor is entitled to absolute immunity for actions taken in his role as a government advocate and that are within the 'scope and territorial jurisdiction of his office." (emphasis omitted) (quoting *Elder*, 54 F.3d at 695)); *Jarallah v. Simmons*, 191 F. App'x 918, 921 (11th Cir. 2006) ("Jarallah's complaint alleged defendants initiated baseless charges against him; however, initiating and pursuing a criminal prosecution falls within a prosecutor's duties and such functions are absolutely protected by prosecutorial immunity."); *Farrell v. Woodham*, No. 2:01-cv-417-FtM-29DNF, 2002 WL 32107645, at *5 (M.D. Fla. May 29, 2002) ("The decision to prosecute is protected by absolute immunity from claims that the decision was malicious and unsupported by probable cause." (citing *Imbler*, 424 U.S. 409)).[10]

---

[10] The State Attorney Defendants also argue that "to the extent Plaintiff seeks to sue ASA Carter due to his supervisory role as Felony Chief, Plaintiff's claim also fails." Doc. No. 16, at 7. It is not clear from Plaintiff's complaint whether he is attempting to assert any supervisory claims against Carter. *See* Doc. No. 1. But, in any event, the undersigned notes that because the same conduct is alleged against the State Attorney Defendants collectively, the same analysis regarding absolute prosecutorial immunity would apply to any supervisory capacity claims against Carter. *See Hoffman*, 793 F. App'x

Therefore, the State Attorney Defendants' motion to dismiss (Doc. No. 16) on the ground of absolute prosecutorial immunity is well taken, which is dispositive as to Plaintiff's claims against Defendants Farmer and Carter.   *See Bevan v. Durling*, 243 F. App'x 458, 462–63 (11th Cir. 2007).

2.   *Eleventh Amendment Immunity.*

The State Attorney Defendants next seek dismissal on the grounds of Eleventh Amendment immunity, insofar as Plaintiff's claims against the Office of the State Attorney and Defendants Farmer and Carter in their official capacities are really claims against the State of Florida.   On review, the undersigned agrees:

> As the State Attorney's Office is a state agency, it is considered an "arm of the state," and therefore, a suit against the State Attorney's Office is for all practical purposes, a suit against the state.   *Rich v. City of Jacksonville*, No. 3:09–cv–454–J–34MCR, 2010 WL 4403095, at *3–4 (M.D.Fla. Mar. 31, 2010) (citing *Perez v. State Attorney's Office*, No. 6:08–cv–1199–Orl–31KRS, 2008 WL 4539430, at *2 (M.D. Fla. Oct. 8, 2008)). The same is true for the employees of the agency.   *See Will v. Michigan Dep ' t of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (suits against state officials in their official capacities are not suits against the officials but rather are suits against the officials' offices and are no different from suits against the State).

---

at 954 ("[I]t would be exceedingly odd if Colaw was entitled to absolute prosecutorial immunity for his conduct in relation to the plaintiffs' prosecution, as we have concluded above, but Colaw's supervisors were not entitled to the same immunity for approving or failing to prevent that same conduct. . . . [W]here a prosecutor is entitled to absolute immunity for certain conduct, a supervisory prosecutor should likewise be entitled to absolute immunity for supervision or training of that same conduct.").

*Hatten v. Decopai*, No. 2:13-cv-829-FtM-29UAM, 2013 WL 6231256, at *2 (M.D. Fla. Dec. 2, 2013).   Thus, because the State Attorney's Office is an "arm of the state," it "falls within the ambit of the State's Eleventh Amendment immunity."   *Cyber Zone E-Cafe, Inc. v. King*, 782 F. Supp. 2d 1331, 1337 (M.D. Fla. 2011).

Accordingly, the motion to dismiss (Doc. No. 16) on the grounds of Eleventh Amendment immunity as it relates to the Office of the State Attorney and Defendants Farmer and Carter in their official capacities is well taken, and also dispositive of these claims raised in the complaint.   *See, e.g.*, *King*, 782 F. Supp. 2d 1337 (dismissing official capacity suit against the state attorney under the Eleventh Amendment); *Anaeme v. Florida*, No. 3:05-cv-178-J-20MMH, 2005 WL 8159685, at *5 (M.D. Fla. Dec. 20, 2005) (claims against state attorney's office barred by Eleventh Amendment immunity); *Farrell*, 2002 WL 32107645, at *3 (Eleventh Amendment immunity required dismissal of official capacity claims against State Attorney). *See also Stevens v. Fort Myers Police Dep't*, No. 2:12-cv-187-FtM-99AEP, 2012 WL 4478978, at *4 (M.D. Fla. Sept. 4, 2012), *report and recommendation adopted*, 2012 WL 4478794 (M.D. Fla. Sept. 28, 2012) (on § 1915 review, dismissing claims against a state attorney's office under the Eleventh Amendment).

Accordingly, I will respectfully recommend that the State Attorney Defendants' motion to dismiss (Doc. No. 16) be **GRANTED** in entirety on the grounds of prosecutorial and Eleventh Amendment immunity.

B.      Defendants Rothenberg, Racine, Burnam, and Shea's Motion to Dismiss (Doc. No. 23).

Plaintiff asserts the following claims against Defendants Rothenberg, Racine, Burnam, and Shea (collectively, the "Officer Defendants"):

- Count I:   42 U.S.C. § 1983 claims under the Fourth Amendment for unlawful detention and malicious prosecution

- Count VII:   42 U.S.C. § 1983 claims under the Fourth Amendment for conspiracy to violate Plaintiff's civil rights[11]

Doc. No. 1, at 25–42.   The Officer Defendants move to dismiss these claims because: (1) Plaintiff's claims are barred by the statute of limitations; (2) the official capacity claims should be dismissed because they are redundant of claims against the City and LPD; (3) Plaintiff fails to allege an underlying constitutional violation because there was probable cause for his arrest; (4) Plaintiff fails to state a claim for conspiracy; and (5) they are entitled to qualified immunity.[12]   Doc. No. 23.   Each argument will be addressed in turn.

---

[11]  Count I is also brought against Chief Dowda, and Count VII is also brought against Chief Dowda and the LPD, which claims are further addressed *infra* with regard to the motion to dismiss filed by Chief Dowda and the LPD.   *See* Doc. No. 22.

[12]  The Officer Defendants also incorporate the arguments made by the City, the LPD, and Chief Dowda that the complaint suffers from procedural defects and constitutes a shotgun pleading.   Doc. No. 23, at 8.   This argument is therefore addressed *infra*, in the analysis related to the motion to dismiss filed by the City, the LPD, and Chief Dowda.   *See* Doc. No. 22.

1.    *Statute of Limitations.*

The Officer Defendants first argue that Plaintiff's claims are time-barred because a four-year statute of limitation applies; Plaintiff's false imprisonment/false arrest claims accrued on July 14, 2016 (the date of his arrest) and his malicious prosecution claims accrued on January 17, 2017 (when the charges were dismissed).    Doc. No. 23, at 6–8.

Section 1983 claims are subject to the statute of limitations governing personal injury actions in the state in which the action was brought, *DeYoung v. Owens*, 646 F.3d 1319, 1324 (11th Cir. 2011), "which in Florida is four years," *City of Hialeah v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002).    *See also Harris v. Goderick*, 608 F. App'x 760, 763–64 (11th Cir. 2015) (applying four-year limitations period in Fla. Stat. § 95.11(3)(*o*) to false arrest claim under § 1983); *Harris v. Rambosk*, No. 2:18-cv-17-FtM-29MRM, 2018 WL 5085721, at *5 (M.D. Fla. Oct. 18, 2018) (applying four-year limitations period in Fla. Stat. § 95.11(3)(*o*) to malicious prosecution claim under § 1983).

As the Officer Defendants argue, Plaintiff's false arrest claims accrued on July 14, 2016 (the date of his arrest).    *See Harris*, 608 F. App'x at 763–64 (statute of limitations on false arrest claim under § 1983 began to run on date of underlying arrest); *Curtis v. Bollinger*, No. 6:14-cv-1345-Orl-41GJK, 2015 WL 12513467, at *3 (M.D. Fla. July 28, 2015) (same).    And Plaintiff's malicious prosecution claims

accrued on January 17, 2017 (when the charges were *nolle prossed*).   Doc. No. 1 ¶ 43. *See Harris*, 2018 WL 5085721, at *5 (citations and quotation marks omitted) ("A federal malicious prosecution cause of action accrues when 'the criminal proceeding that gives rise to the action has terminated in favor of the accused.' '[C]ourts have found favorable termination to exist by virtue of . . . an entry of a nolle prosequi. . . .'") (quoting *Uboh v. Reno*, 141 F.3d 1000, 1005 (11th Cir. 1998))).

Plaintiff filed the complaint in this case on January 19, 2021.   Doc. No. 1. Thus, the Officer Defendants are correct that Plaintiff's false imprisonment/false arrest claim, which accrued on July 14, 2016, is time-barred.   *See, e.g.*, *Harris*, 608 F. App'x at 763–64 (section 1983 complaint alleging false arrest time-barred under Fla. Stat. § 95.11(3)(*o*)).   However, upon consideration, I will recommend that the Court reject the contention that the malicious prosecution claim is likewise time-barred. Specifically, although January 19, 2021, on its face, was more than four years after the date that the malicious prosecution claim accrued (January 17, 2017), January 17, 2021 itself was a Sunday, and January 18, 2021 was a legal holiday (Martin Luther King, Jr. Day), rendering the complaint filed on January 19, 2021 timely.   *See* Fed. R. Civ. P. 6(a)(1)(C).   *See also Collins v. Sec'y, Fla. Dep't of Corr.*, No. 3:15-cv-757-J-39PDB, 2018 WL 1618039, at *3 n.5 (M.D. Fla. Apr. 4, 2018) (applying Fed. R. Civ. P. 6(a)(1)(C) when statute of limitations would have expired on a Sunday).

Moreover, although the Officer Defendants also mention the conspiracy count (Count VII) in the portion of the motion to dismiss related to the statute of limitations, they provide no argument or legal authority that the statute of limitations would preclude the conspiracy claim. *See* Doc. No. 23, at 7–8. And given that Plaintiff alleges that such conspiracy occurred between July 14, 2016 and January 17, 2017, *see* Doc. No. 1, at 42, I will recommend that the Court decline at this juncture to dismiss the conspiracy claim on statute of limitations grounds. *See generally Tillman v. Orange Cnty.*, 519 F. App'x 632, 635-36 (11th Cir. 2013) (four-year statute of limitations under Florida law applicable to conspiracy to maliciously prosecute claim). *See also Newsome v. James*, 968 F. Supp. 1318, 1324 (N.D. Ill. 1997) (noting that a civil conspiracy claim accrues under § 1983 "when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action," and applying the same accrual date as the attendant claim for malicious prosecution).

Accordingly, I will respectfully recommend that the motion to dismiss as to the Officer Defendants (Doc. No. 23) be granted in part on statute of limitations grounds, solely as it relates to the false arrest/false imprisonment claim.

### 2.   *Official Capacity Claims.*

The Officer Defendants next argue the official capacity claims against them must be dismissed as redundant to the claims against the City and the LPD. Doc.

No. 23, at 9.   On review, and absent a response to the motion to dismiss from Plaintiff, the undersigned agrees.   "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond)."   *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).   *See also Laroche v. Browning*, No. 8:21-cv-562-T-VMC-CPT, 2021 WL 3174211, at *3 (M.D. Fla. July 26, 2021) (and cases cited therein) (citations and quotation marks omitted) ("Where a plaintiff has named a state agency in the same suit, any claim against an officer of that agency in his or her official capacity is duplicative of the claim against the agency and is due to be dismissed."); *Btesh v. City of Maitland*, No. 6:10-cv-71-Orl-19DAB, 2010 WL 883642, at *5 (M.D. Fla. Mar. 5, 2010) ("When identical Section 1983 claims are made against both a governmental entity and the entity's officers, employees, or agents in their official capacities, courts should dismiss the claim against the named individual defendants in their official capacities as 'redundant and possibly confusing to the jury.'" (quoting *Busby*, 931 F.2d at 776)).

Accordingly, I will respectfully recommend that the official capacity claims against the Officer Defendants be dismissed.   *See, e.g.*, *Ripley v. City of Lake City*, No. 3:04-cv-01328-JHM-MCR, 2005 WL 1862690, at *1 (M.D. Fla. Aug. 4, 2005)

(dismissing official capacity claims against Lake City police officers with prejudice as duplicative of claims filed against the city of Lake City in the same lawsuit).

    3.    *Failure to State a Conspiracy Claim.*

In their motion, the Officer Defendants also argue that Plaintiff fails to state a claim for conspiracy under § 1983.   Doc. No. 23, at 17–19.   Given the recommendation that the official capacity claims against the Officer Defendants be dismissed, I address this claim (and the remaining claims) solely as it relates to the Officer Defendants in their individual capacities.

"To establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff must show that the defendants reached an understanding to violate the plaintiff's rights."   *Dolin on Behalf of N.D. v. West*, 22 F. Supp. 2d 1343, 1350 (M.D. Fla. 1998), *aff'd sub nom. Dolin v. West*, 207 F.3d 661 (11th Cir. 2000) (citing *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988)), *overruled on other grounds by Whiting v. Traylor*, 85 F.3d 581, 584 n. 4 (11th Cir. 1996)).   "[T]he plaintiff must plead a § 1983 conspiracy claim with particularity, and simply claiming a conspiracy is not enough."   *Id.* (citing *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984)).

In the conspiracy count of the complaint, Plaintiff alleges as follows:

[Chief Dowda and Defendants Rothenberg, Racine, Burnam, and Shea] had an unwritten agreement to proceed with unsubstantiated arrest and recommendations for continuing prosecution of Plaintiff.

The agreement between these Defendants was implemented on July 14, 2016, and continued to be implemented through January 17, 2017 when

> [Defendants Rothenberg, Racine, Burnam, and Shea] concocted a series of circumstances in an attempt to justify the arrest of Plaintiff and thereby subject Plaintiff to unreasonable seizure in violation of the Fourth Amendment, even though the Defendants knew that no factual basis existed and no legal justification, probable cause or arguable probable cause existed for Plaintiff's arrest. Defendants then knowingly took actions to cover up the unlawful acts in furtherance of the conspiracy in an attempt to avoid exposure or detection of the unlawful acts.

Doc. No. 1 ¶¶ 132–33 (Count VII).

On review, I find these conclusory allegations insufficient to state a claim for conspiracy under § 1983. *See, e.g.*, *Grider v. Cook*, 522 F. App'x 544, 547 (11th Cir. 2013) (general conclusory allegations cannot make a conspiracy claim); *Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 310 (11th Cir. 2005) (conclusory allegations lacking factual support insufficient to support a claim of conspiracy under § 1983). *See also Brown v. McCabe*, No. 8:08-cv-2257-T-17TGW, 2008 WL 5111232, at *3 (M.D. Fla. Dec. 3, 2008) ("Merely 'stringing together' adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy.") (citing *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992)). Plaintiff does not allege any facts with particularity to establish, even under the liberal pleading standards afforded to *pro se* parties, the existence of a conspiracy.

Accordingly, I find that the Officer Defendants' motion to dismiss (Doc. No. 23) regarding the conspiracy claim (Count VII) is well taken.

4.     *Probable Cause/Arguable Probable Cause.*

The Officer Defendants further argue that because there was probable cause for Plaintiff's arrest, there is no underlying constitutional violation to support Plaintiff's § 1983 claims for false arrest and malicious prosecution.   Doc. No. 23, at 10–17.   In support, they point to the Probable Cause Affidavit from the underlying state court criminal case, which they attach to their motion to dismiss.   *Id.* at 13.   *See* Doc. No. 23-1.[13]   Relatedly, the Officer Defendants argue that because there was probable cause (or, at the very least, arguable probable cause) for Plaintiff's arrest, they are entitled to qualified immunity.   Doc. No. 23, at 19–22.

"A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim.   The existence of probable cause, however, is an absolute bar to a section 1983 action for false arrest."   *Marx*, 905 F.2d at 1505–06 (citations omitted).   "Probable cause to arrest exists when law enforcement

---

[13]  The Court may consider documents attached to a motion to dismiss that are "(1) central to the plaintiff's claim and (2) undisputed."   *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005).   *See also Wittenberg v. Judd*, No. 8:17-cv-467-T-26AEP, 2017 WL 1399817, at *3 (M.D. Fla. Apr. 19, 2017) (citations and quotation marks omitted) ("The court may consider exhibits if referenced in the complaint and attached to the defendant's motion to dismiss. The court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.   The Rule 12(b)(6) motion need not be converted into a Rule 56 summary judgment motion where certain documents and their contents are undisputed.") (internal quotations and citations omitted).   Here, the probable cause affidavit is central to Plaintiff's claims as it is referenced throughout the complaint.   *See* Doc. No. 1.   Plaintiff does not argue otherwise.   Also attached to the motion to dismiss is the victim's (Ramos) sworn statement, which is also central to Plaintiff's claims.   *See* Doc. Nos. 1, 23-2.

officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.   Probable cause determinations traditionally have been guided by reviewing the totality of the circumstances." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992) (citations omitted).   "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *Ortega*, 85 F.3d at 1525 (citing *Marx*, 905 F.2d at 1506).

However, "[t]o be immune from § 1983 false-arrest and malicious-prosecution claims, an officer need only demonstrate that she acted with arguable probable cause.  Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest [the] Plaintiff." *Brivik v. Law*, 545 F. App'x 804, 806 (11th Cir. 2013) (first citing *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir. 1997), then citing *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)).   Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Migut v. Flynn*, 131 F. App'x 262, 264 (11th Cir. 2005) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991))).

"Whether an arresting officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the facts of the case." *Reid*

*v. Henry Cnty.*, 568 F. App'x 745, 748 (11th Cir. 2014) (citing *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004)).

Here, Plaintiff was charged with robbery by sudden snatching, Fla. Stat. § 812.131, grand theft, Fla. Stat. § 812.014, and tampering with a witness (preventing a victim from calling 911 during the commission of a felony), Fla. Stat. § 914.22. Doc. No. 1 ¶ 31.  *See also* Doc. No. 23-1 (copy of arrest affidavit by Officer Mason Rothenberg).

"'Robbery by sudden snatching' means the taking of money or other property from the victim's person, with intent to permanently or temporarily deprive the victim or the owner of the money or other property, when, in the course of the taking, the victim was or became aware of the taking."   Fla. Stat. § 812.131.

Pursuant to Fla. Stat. § 812.014, "A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit from the property (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property." Fla. Stat. § 812.014(1).   "It is grand theft of the third degree and a felony of the third degree . . . if the property stolen is:   Valued at $750 or more, but less than $5,000." *Id.* § 812.014(2)(c)(1).

And as relevant here, "tampering with a witness" is defined as: "A person who knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, or offers pecuniary benefit or gain to another person, with intent to cause or induce any person to: hinder, delay, or prevent the communication to a law enforcement officer or judge of information relating to the commission or possible commission of an offense or a violation of a condition of probation, parole, or release pending a judicial proceeding."   Fla. Stat. § 914.22(1)(e).

According to the arrest affidavit, Officer Rothenberg found probable cause for Plaintiff's arrest on these charges due to the victim's sworn statements, a video of the incident on the victim's cellphone, and Officer Rothenberg's on-scene investigation.   Doc. No. 23-1, at 2.   In the arrest affidavit, Officer Rothenberg avers that on his arrival at the scene, the following occurred:

> Upon my arrival to the scene I made contact with Roderic Boling, who was loud and emotional.   Boling stated that there was an issue with a male later identified as Elmo Ramos recording a conversation that had occurred prior to my arrival.   Boling also stated that Ramos took a photo of his tag on his vehicle.   Boling stated that Ramos was called to the location to receive money for work that he had done over an approximate 4 week span.   Boling stated that Ramos demanded more money and threatened to call the news and the corporate office of the company that owed him the money.   Boling stated that he then called the police to get Ramos escorted off the property.
>
> I then made contact with Ramos.   Ramos stated that he was called to the location to receive money for approximately 4 weeks of work.   Ramos stated that he expressed to Boling that he believed the company

was "shady" and they were using poor business tactics.   Ramos stated
that he told Boling that he called the news and the corporate office and
this made Boling very angry.   Ramos stated that he then was inside
the store and Boling became enraged and he began yelling at him so
Ramos pulled out his Apple iPhone 6+ and stated that he was going to
call the police.   Ramos stated that Boling then snatched the phone out
of his hands and he hindered him from calling the police.   Ramos
stated that Boling then walked outside with the phone in his possession
and Ramos was finally able to grab the phone out of his hands.   It
should be noted that Ramos was able to record the end of the incident
on his phone.   The video will be uploaded . . . .

*Id.* at 1.

And in his sworn statement, Ramos states:

I attempted to call the police and a man snatched my phone as I was
trying to call.   He looked over at his wife after I told him I was trying
to call the police and told her to call the police because I wanted to call.
He then held my phone screaming obscenities and threats.   I grabbed
my phone unlocked it with my thumbprint pressed record on my video
and pulled away my phone while recording asking for him to stop
harassing me.   My iPhone 6 Plus is worth more than $1100.

Doc. No. 23-2.

In the complaint, Plaintiff asserts that there was lack of probable cause for his
arrest because many of the statements in the arrest affidavit are untrue.   *See* Doc.
No. 1, at 17–20.   Plaintiff also alleges that the version of events in the arrest affidavit
are contradicted by the victim's (Ramos') written victim statement.   *Id.* at 19.
Plaintiff further argues that the arrest affidavit omits much evidence and
information.   *Id.* at 20–24.   Finally, Plaintiff alleges that the officers willfully failed
to investigate at the scene.   *Id.* at 24–25.

Given Plaintiff's allegations that the probable cause affidavit contained both false statements and omissions, and that the officers ignored contrary and exculpatory evidence and witness statements, I recommend the Court decline to dismiss on the grounds of probable cause or arguable probable cause/qualified immunity as it relates to the Officer Defendants.

More specifically, the complaint alleges numerous detailed allegations that Officer Rothenberg included false statements in the probable cause affidavit, including: (1) "Ramos stated that he told Boling he called the news and the corporate office and this made Boling very angry," which statement Plaintiff claims was contradicted by the eyewitness statements of Mrs. Boling, Jacob Boling, and James Laravuso, which were completely disregarded at the scene, and contradicted by an iPad video security tape from that day (Doc. No. 1 ¶¶ 46, 50); (2) "Ramos stated he was then **inside the store** and Boling became enraged and began yelling at him so Ramos pulled out his Apple iPhone 6+ and stated that he was going to call the police," which statement Plaintiff claims is untrue because Ramos never claimed he was "going to" nor made any attempt to call 911 on either of two cellphones in his possession, as documented by an iPad security video and as contradicted by witness statements that were disregarded (*id.* ¶¶ 47, 50); (3) "Ramos stated that Boling then snatched the phone out of his hands and he hindered him from calling the police," such statement being false as indicated in the iPad security

tape demonstrating that Plaintiff exited the building with no cellphone in his possession, and witness statements, which the officers ignored (*id.* ¶¶ 48, 50); and (4) "Ramos stated that Boling then walked outside with the phone in his possession and Ramos was finally able to grab the phone out of his hands," which statement is contradicted by the iPad security video documenting Ramos exiting the building with two cellphones in his possession, and that Plaintiff exited the building with no cellphones in his possession, and which is also contradicted by (disregarded) witness statements (*id.* ¶¶ 49, 50).

Plaintiff further alleges that Rothenberg intentionally omitted any reference to Mrs. Boling, Jacob Boling, and James Laravuso's eyewitness statements during the on-scene investigation, statements which directly contradicted almost every statement in the probable cause affidavit. *Id.* ¶ 50. Rothenberg also intentionally failed to question or interview fifteen (15) other potential witnesses at the scene. *Id.* ¶ 51. Rothenberg omitted portions of, altered, and fabricated the probable cause affidavit. *Id.* ¶¶ 52, 56. Plaintiff contends that absent from the probable cause affidavit is any mention that Ramos had two iPhones in his possession on the day in question, which are clearly visible on the iPad security video; that Ramos allowed officers to review his call log on one of the phones on scene, demonstrating Ramos never called or attempted to call 911; and that Ramos's call log demonstrated

he was talking on one of the cellphones throughout the duration of the alleged robbery.  *Id.* ¶ 53.

Plaintiff also alleges that while on scene, the Officer Defendants disregarded evidence and information offered to them, and elected not to obtain easily discoverable facts that would exculpate Plaintiff.  *Id.* ¶ 57.  For example, Plaintiff states that a minimum of fifteen (15) eyewitnesses were present at the scene who officers declined to question.  *Id.* ¶ 58.  Plaintiff further states that officers elected not to review Plaintiff's iPad security video that recorded the incident.  *Id.* ¶ 58(d).

Accepting Plaintiff's allegations as true, I recommend that the Court find that Plaintiff has set forth sufficient allegations to survive the Officer Defendants' motion to dismiss on the grounds of probable cause or arguable probable cause. Based on the above-recited allegations, it could be concluded that the Officer Defendants lacked probable cause or arguable probable cause to effect Plaintiff's arrest.  *See, e.g.*, *Valderrama v. Rousseau*, No. 11-CIV-24637-COOKE/TURNOFF, 2012 WL 12925174, at *5 (S.D. Fla. Sept. 18, 2012) ("Plaintiff alleges that Defendants did not have even arguable probable cause because there was absolutely no reason for his arrest.  The reason contained within the arrest affidavits and police reports was a complete fabrication, since he did not have any drugs on his person and the documents contained numerous inherent inconsistencies.  Thus, taking Plaintiff's claims as true, the false arrest claims cannot be dismissed."); *see also Jones*, 174 F.3d

at 1285 (stating that the law is clearly established that "the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen"; therefore, "qualified immunity will not shield [an officer] from liability for such false statements, if such false statements were necessary to the probable cause"); *Paul v. Bradshaw*, No. 12-81381-CIV-ROSENBAUM/SELTZER, 2013 WL 12084298, at *4 (S.D. Fla. Aug. 7, 2013) ("An officer's good-faith mistake may indicate arguable probable cause, but 'factual issues as to [the officer's] honesty and credibility' do not." (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1233 (11th Cir. 2004)).

Accordingly, I will recommend that the Court reject the motion to dismiss on the grounds of probable cause or arguable probable cause/qualified immunity. Notably, this would not preclude the Officer Defendants from reasserting these defenses "at the close of discovery, if warranted."   *See Perez v. Harrelson*, No. 6:15-cv-879-Orl-37GJK, 2016 WL 866590, at *8 (M.D. Fla. Mar. 7, 2016).

In sum, I respectfully recommend that the Court grant in part the Officer Defendants' motion to dismiss (Doc. No. 23) as it relates to the false arrest claim because the claim is time-barred.   Moreover, the official capacity claims against the Officer Defendants should be dismissed as redundant.   In addition, the conspiracy claim (Count VII) fails to state a claim against the Officer Defendants in their individual capacities.   And, as discussed below with respect to the motion to

dismiss filed by the City, the LPD, and Chief Dowda, the complaint, at the very least, constitutes an impermissible shotgun pleading.   But, the Officer Defendants' motion should be denied insofar as they seek a finding that they are entitled to qualified immunity or that no underlying constitutional violation occurred.   For these reasons, I will recommend that the Court grant the motion, for the most part, but allow Plaintiff to file an amended complaint to rectify the deficiencies set forth herein, and as set forth below.

      C.     <u>City of Longwood, Longwood Police Department, and Longwood Chief of Police Motion to Dismiss (Doc. No. 22)</u>.

Plaintiff asserts the following claims against the LPD and Chief Dowda:

- Count I:   42 U.S.C. § 1983 claims under the Fourth Amendment for unlawful detention and malicious prosecution (against Chief Dowda)

- Count III:   42 U.S.C. § 1983 *Monell* claim (against unspecified Defendants, but mentioning Chief Dowda and the LPD)

- Count IV:   42 U.S.C. § 1983 claims under the Fourth Amendment for malicious prosecution (against Chief Dowda and the LPD)

- Count V:   42 U.S.C. § 1983 *Monell* claim (against Chief Dowda and the LPD)

- Count VII:   42 U.S.C. § 1983 claims under the Fourth Amendment for conspiracy (against Chief Dowda and the LPD)

Doc. No. 1, at 25–42.[14]

From the complaint, it appears that Plaintiff asserts four central claims against these Defendants under § 1983: malicious prosecution, false arrest/imprisonment, conspiracy, and *Monell* claims.   *Id.*

As discussed above, "[t]o establish a claim of malicious prosecution under § 1983, a plaintiff must prove a violation of his Fourth Amendment right to be free from an unreasonable seizure in addition to establishing the elements of the common-law tort of malicious prosecution."   *Damali*, 766 F. App'x at 827 (citing *Wood*, 323 F.3d at 881).   "To state a claim for false arrest under § 1983, a plaintiff must show that he was arrested without probable cause or a warrant."   *Topa*, 2018 WL 4698462, at *2 (citing *Andrews*, 729 F. App'x at 808; *Marx*, 905 F.2d at 1505). And "[t]o establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff must show that the defendants reached an understanding to violate the plaintiff's rights."   *Dolin on Behalf of N.D.*, 22 F. Supp. at 1350.

As to the *Monell* claims, "[t]o state a claim under Section 1983 against a municipality, a Plaintiff must allege that the constitutional injury is caused by the execution of a government entity's official custom or policy."   *Sheffield v. City of*

---

[14] As demonstrated by this summary, Plaintiff does not explicitly assert any counts of the complaint against the City, although the City is referenced throughout the complaint.   *See* Doc. No. 1.   The City, the LPD, and Chief Dowda argue that Plaintiff fails to state a claim against the City for this reason, an argument addressed *infra*.

*Sarasota*, No. 8:15-cv-319-T-30TBM, 2015 WL 1346421, at *6 (M.D. Fla. Mar. 24, 2015) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)).  "But a municipal employer is not vicariously liable under Section 1983 for injuries caused solely by its employees." *Id.* (citing *Monell*, 436 U.S. at 691–94; *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  "A plaintiff can only impose Section 1983 liability on a municipality if the plaintiff can show (1) that her constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to that right, and (3) that the policy or custom caused the constitutional violation." *Id.* (citing *McDowell,* 392 F.3d at 1289).

The City, the LPD, and Chief Dowda move to dismiss the complaint on the following bases: (1) Plaintiff's claims are barred by the statute of limitations; (2) the complaint is an impermissible shotgun pleading; (3) the LPD is not a proper Defendant; (4) Plaintiff's complaint fails to state a claim for several reasons; (5) the official capacity claims against Chief Dowda are redundant; (6) the supervisory and ratification claims against Chief Dowda fail; (7) Chief Dowda is entitled to qualified immunity on the supervisory claim; and (8) failure to state a claim for conspiracy. Doc. No. 22.    Each of these contentions will be addressed in turn.

1.    *Statute of Limitations.*

Some of the arguments raised by the City, the LPD, and Chief Dowda are the same as those discussed above regarding the Officer Defendants, specifically as it

relates to the statute of limitations, probable cause for the arrest, and failure to state a claim of conspiracy.  *See* Doc. No. 22.  For the same reasons discussed above regarding the Officer Defendants' motion to dismiss, I find that Plaintiff's unlawful detention/false arrest claims against the City, the LPD, and Chief Dowda are time-barred.   However, as discussed above in relation to the Officer Defendants' motion to dismiss, I will respectfully recommend that the Court deny the request to dismiss the complaint on statute of limitations grounds as it relates to the malicious prosecution and conspiracy claims.

The City, the LPD, and Chief Dowda also appear to argue that Plaintiff's *Monell* claims are barred by the same four-year statute of limitations, but they cite no legal authority in support.  *See* Doc. No. 22, at 6–8.  And on review, the undersigned is not convinced that Plaintiff's complaint, as pleaded, demonstrates that the *Monell* claims are time-barred because the date of Plaintiff's discovery of any alleged policy or practice is unclear.  *Cf. Derossett v. Ivey*, No. 6:20-cv-716-Orl-37GJK, 2020 WL 4547780, at *2 (M.D. Fla. Aug. 6, 2020) (even though *Monell* claims were raised over four years after underlying incident, it was not apparent from the face of the complaint that the statute of limitations barred the plaintiff's claims); *Desrouleaux v. Vill. of Biscayne Park*, No. 18-cv-23797-GAYLES/OTAZO-REYES, 2019 WL 2076189, at *3 (S.D. Fla. May 10, 2019) (*Monell* claims not clearly barred by statute of limitations because although arrest occurred in 2013, the plaintiff did not

learn of illegal policy until 2015, within the four-year limitations period). Accordingly, although the City, the LPD, and Chief Dowda's motion is due to be granted on statute of limitations grounds as to the false arrest claim, I will respectfully recommend that the Court decline to dismiss the malicious prosecution, conspiracy, and *Monell* claims on the same basis.

2. *Whether the LPD is a Proper Defendant.*

The motion to dismiss seeks dismissal of the LPD as an improper Defendant. Doc. No. 22, at 11–12.   On review, and absent any opposition from Plaintiff, this argument is well taken.   *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (stating that "Sheriff's departments and police departments are not usually considered legal entities subject to suit"); *see also Am. Humanist Ass'n, Inc. v. City of Ocala*, 127 F. Supp. 3d 1265, 1273 (M.D. Fla. 2015) (city police department not subject to suit under § 1983); *Pierre v. Schlemmer*, 932 F. Supp. 278, 280 (M.D. Fla. 1996) (police department not subject to suit under § 1983); *Mann v. Hillsborough Cnty. Sheriff's Off.*, 946 F. Supp. 962, 971 (M.D. Fla. 1996) ("[T]he city police department is not a legal entity and has no legal existence separate and apart from the city.").

Accordingly, the LPD should be dismissed from the case.   *See Am. Humanist Ass'n, Inc.*, 127 F. Supp. 3d at 1273; *Pierre*, 932 F. Supp. at 280.   *See also Cooper v. City of Starke*, No. 3:10-cv-280-J-34MCR, 2011 WL 1100142, at *11 (M.D. Fla. Mar. 23, 2011) (adopting recommendation to dismiss with prejudice a city police department as a

party); *Oates v. Jackson Cnty. Sheriff's Off.*, No. 5:09CV303/RS-MD, 2010 WL 785657, at *2 (N.D. Fla. Mar. 4, 2010) (dismissing complaint against an improperly named sheriff's office with prejudice); *Richardson v. Maughan*, No. 97-996 CIV ORL19C, 1998 WL 35177481, at *1 (M.D. Fla. June 11, 1998) (same).

   3. *Official Capacity Claims Against Chief Dowda.*

   The motion to dismiss also seeks dismissal of the official capacity claims against Chief Dowda because they are redundant given that Plaintiff also seeks redress from the City.   Doc. No. 22, at 14.   On review, the undersigned again agrees.   "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond)."   *Busby*, 931 F.2d at 776.

   Accordingly, because the City is a Defendant in this case, and suit on the same claims against Chief Dowda in his official capacity is redundant, the motion to dismiss the official capacity claims against Chief Dowda is well taken.   *See id.   See also Am. Humanist Ass'n, Inc.*, 127 F. Supp. 3d at 1273 ("Defendants correctly argue—and Plaintiffs do not dispute—that the claims against the Mayor and Chief in their official capacities are duplicative of Plaintiffs' claims against the City itself.");

*Thompson v. City of Birmingham*, 5 F. Supp. 3d 1304, 1318 (N.D. Ala. 2014) (claims against chief of police duplicative of claims against the city).

   4.   *Supervisory Claims Against Chief Dowda.*

   To the extent that Plaintiff is asserting supervisory claims against Chief Dowda, it appears that such claims would attach in Chief Dowda's individual capacity (particularly given that the official capacity claims against Chief Dowda are redundant to those against the City).   *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009) (emphasis added) ("'The standard by which a supervisor is held liable in her *individual capacity* for the actions of a subordinate is extremely rigorous.'" (quoting *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)).   "It is well-established that supervisory officials are not vicariously liable in their individual capacities for the acts of their subordinates in Section 1983 suits."   *Adams v. Gruler*, No. 6:05-cv-008-Orl-18DAB, 2005 WL 8159859, at *1 (M.D. Fla. May 25, 2005) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).   "Supervisory liability occurs only 'when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'"   *Id.* (quoting *Cottone*, 326 F.3d at 1360).

   As discussed above, it appears from the complaint that Plaintiff is asserting two central claims relevant here: malicious prosecution and false arrest/false

imprisonment.   Doc. No. 1, at 25–42.   However, as Defendants argue, there are no facts alleged in the complaint establishing that Chief Dowda directly took part in Plaintiff's arrest.   *See* Doc. No. 1.   Thus, Plaintiff must establish a causal connection between the actions of Chief Dowda and any alleged constitutional deprivation.   *See Adams*, 2005 WL 8159859, at *1.   In the complaint, Plaintiff alleges only that Chief Dowda was the officer in charge at the LPD, Doc. No. 1 ¶ 7, that Chief Dowda acted in "collaboration" with the other officers, *id.* ¶ 63, that he "approved of and ratified" the actions of the officers, leading to implementation of "policy agreements by the LPD," *id.* ¶ 99–103, 106–09, and that he "was the final policymaker for [the LPD] for purposes of adopting law enforcement policies concerning the filing of a PCA," *id.* ¶ 94.

I find Plaintiff's conclusory allegations insufficient to state a supervisory claim against Chief Dowda.   *See Braddy*, 133 F.3d at 801 (to be liable under § 1983, the supervisor's liability must be based on something more than the theory of respondeat superior).   *See also Smith v. Owens*, 625 F. App'x 924, 927 (11th Cir. 2015) (conclusory assertions alone cannot state a claim for supervisor liability under § 1983); *Adams*, 2005 WL 8159859, at *1 ("Plaintiff has alleged no facts indicating that Chief McCoy personally participated in his arrest.   Nor does the conclusory allegation that Chief McCoy promulgated a 'Use of Force' policy, by itself, suggest a causal connection to the alleged constitutional deprivation.").   At bottom, the

allegations of Plaintiff's complaint are "limited to his own experience and as a result do not suggest a policy or custom of deliberate indifference to constitutional rights." *See Rankin v. Bd. of Regents of Univ. Sys. of Ga.*, 732 F. App'x 779, 783 (11th Cir. 2018). Moreover, as discussed above, the false arrest/false imprisonment claims against the Officer Defendants and Chief Dowda are precluded by the statute of limitations, also barring any claims for supervisor liability against Chief Dowda on the same basis. *See Smalls v. Cole*, No. 3:05-cv-823-J-16MMH, 2005 WL 2126250, at \*2 (M.D. Fla. Sept. 1, 2005) (four-year statute of limitations under Florida law applied to § 1983 supervisory claim).[15]

Accordingly, the motion to dismiss (Doc. No. 22) as it relates to the supervisory liability claims against Chief Dowda is also well taken.[16]

---

[15] I note that the supervisory claims against Chief Dowda are distinct from the *Monell* claims raised in the complaint. *See Perkins v. Hastings*, No. 4:15-CV-00310 BSM, 2017 WL 5894198, at \*2 (E.D. Ark. Mar. 24, 2017) ("A claim of a *Monell* custom or pattern is a distinct claim from that of supervisory liability…"), *aff'd*, 915 F.3d 512 (8th Cir. 2019); *Mariscal v. McIntosh*, No. CV 04-9087 CAS, 2006 WL 6627090, at \*3 (C.D. Cal. Dec. 19, 2006) ("Supervisory liability is distinct from *Monell* liability.").

[16] To the extent that the motion to dismiss alleges that Chief Dowda is entitled to qualified immunity on the supervisory claims, the motion fails to sufficiently address this issue. Specifically, in one sentence the movants contend that "[i]t is well-established that a supervisor sued in his individual capacity for failure to train, or ratification, can assert qualified immunity as a defense." Doc. No. 22, at 23. Although the movants thereafter string-cite some cases, they fail to apply that authority to the facts of this case or demonstrate that Chief Dowda would be entitled to qualified immunity here. *See id.* And, as discussed above regarding the Officer Defendants, accepting the allegations of the complaint as true, the Court cannot determine the presence or absence of probable cause or arguable probable cause at this juncture. Thus, a determination regarding qualified immunity would also be premature.

5.      *Probable Cause/Constitutional Violation.*

The City, the LPD, and Chief Dowda also move to dismiss the complaint because there was no underlying constitutional violation, "there being clear and undisputed probable cause for the arrest."   Doc. No. 22, at 17.[17]   For the reasons discussed above regarding the Officer Defendants' contentions regarding probable cause/arguable probable cause, I will respectfully recommend that the Court decline to dismiss the complaint on this basis.   *See supra*, pp. 22–30.   *See also Jones*, 174 F.3d at 1285 (stating that the law is clearly established that "the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen").

6.      *Failure to State a Claim.*

Outside of the arguments already addressed in this Report, the motion to dismiss appears to raise three additional arguments under Fed. R. Civ. P. 12(b)(6), including that Plaintiff's Fourteenth Amendment claims fail to state a cause of

---

[17] According to the movants, "Plaintiff suggests that the Police Officers should have held a trial and weighed the complaint of a victim against the statements of the alleged perpetrator and his companions at approximately 11:00 PM during Busch Garden's Howl-O-Scream event *before* placing him under arrest."   Doc. No. 22, at 17.   However, in the complaint and elsewhere in the record, there are no further allegations regarding this altercation taking place at Busch Gardens, and according to the complaint, the altercation took place in the morning.   *See, e.g.*, Doc. No. 1 ¶¶ 9, 23.

action, that Plaintiff fails to adequately state a claim for conspiracy, and that Plaintiff fails to properly plead any claim against the City.   Doc. No. 22, at 13–14, 23.

First, the City, the LPD, and Chief Dowda argue that Plaintiff's "claims of unlawful seizure (false imprisonment and malicious prosecution) are governed by the Fourth Amendment."   *Id.* at 13.   Thus, according to the movants, to the extent that Plaintiff has pleaded these claims under the Fourteenth Amendment, they should be dismissed.   *Id.*   Plaintiff's complaint in this regard is not a model of clarity.   For one, he appears to be asserting his false imprisonment and malicious prosecution claims against the City, the LPD, and Chief Dowda under the Fourth Amendment alone.   *See* Doc. No. 1, at 25–42 (Counts I, III, IV, V, and VII).   On the other hand, however, in an introductory portion of the complaint, Plaintiff appears to be asserting all of his claims under the Fourth and Fourteenth Amendments.   *See* Doc. No. 1, at 2 ("This is a civil rights action filed on behalf of Plaintiff, RODERIC LEE BOLING III(BOLING), whose rights under the Fourth and Fourteenth Amendments to the United States Constitution were violated when he was, without the existence of probable cause or arguable probable cause, wrongfully arrested, unlawfully detained, and maliciously prosecuted by Longwood Police Officers, employed by the City of Longwood.").

To the extent that Plaintiff is attempting to assert his false imprisonment and malicious prosecution claims against the City, the LPD, and Chief Dowda under the

Fourteenth Amendment, the motion to dismiss in this regard is well taken.  *See, e.g.*, *Powell v. Fravel*, No. 6:16-cv-1630-Orl-37DCI, 2016 WL 6893944, at *3 (M.D. Fla. Nov. 23, 2016) (malicious prosecution claim could not be brought under the Fifth or Fourteenth Amendments); *Sheffield*, 2015 WL 1346421, at *6 (claim for false imprisonment based on Fourteenth Amendment was duplicative to Fourth Amendment false arrest claim).  *See also Galloway v. City of Abbeville*, 871 F. Supp. 2d 1298, 1309 (M.D. Ala. 2012) (dismissing federal false imprisonment claim and stating that "a brief detention is more properly addressed under the Fourth Amendment.").

Second, the City, the LPD, and Chief Dowda also join in the Officer Defendants' argument that Plaintiff's complaint fails to adequately state a conspiracy claim.  *See* Doc. No. 22, at 23.  As discussed above, the undersigned agrees.  *See, e.g.*, *Grider*, 522 F. App'x at 547 (general conclusory allegations cannot make a conspiracy claim); *Hansel*, 132 F. App'x at 310 (conclusory allegations lacking factual support insufficient to support a claim of conspiracy under § 1983).

Third, the motion seeks dismissal against the City for failure to adequately allege which claims are directed against the City.  Doc. No. 22, at 13–14.  On review, the undersigned again agrees.  In no count of the complaint does Plaintiff specifically allege that such claim is brought against the City.  *See* Doc. No. 1, at 25 (Count I against the Officer Defendants and Chief Dowda), *id.* at 28 (Count II against

the State Attorney Defendants), *id.* at 33 (Count III against unknown Defendants, containing allegations only to Chief Dowda and the LPD), *id.* at 34 (Count IV against Chief Dowda and the LPD), *id.* at 35 (Count V against Chief Dowda and the LPD), *id.* at 36 (Count VI against the State Attorney Defendants), *id.* at 41 (Count VII against the LPD and the Officer Defendants).   Nonetheless, as discussed above, and as argued by the City, the LPD, and Chief Dowda, the City is the proper Defendant for Plaintiff's claims against Chief Dowda in his official capacity and the claims against the LPD, particularly the *Monell* claims.   *See* Doc. No. 22.[18]   *See also Busby*, 931 F.2d at 776; *Dean*, 951 F.2d at 1214.   Thus, to the extent that the complaint fails to adequately allege which claims are brought against the City, the complaint in this regard is a shotgun pleading, rendering repleader, at the very least, proper. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (defining one type of shotgun pleading as that which asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against").

---

[18] For this reason, Defendants' request for a blanket dismissal with prejudice of the City from the case for Plaintiff's failure to adequately identify the claims against the City is not well taken.

7.    *Shotgun Pleading.*

Indeed, the City's, the LPD's, and Chief Dowda's final argument in their motion to dismiss is that Plaintiff's complaint is an impermissible shotgun pleading. Doc. No. 22, at 8–11.   The State Attorney Defendants, as well as Defendants Rothenberg, Racine, Burnam, and Shea, join in this argument.   *See* Doc. No. 16, at 14; Doc. No. 23, at 8.   Defendants contend that the complaint fails to include a short plain statement of the claims under Rule 8(a)(2), and it fails to include separately numbered paragraphs containing separate counts for claims founded on a separate transaction or occurrence, as required by Rule 10(b).   Doc. No. 22, at 10.   Thus, they argue that the complaint should be dismissed, or the Court should order a more definite statement under Rule 12(e).   *Id.* at 11.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"   *Weiland*, 792 F.3d at 1320. Shotgun pleadings generally present in one of four ways: (1) a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that fails to separate "into a different count each cause of action or claim for relief; and (4) complaints containing

"multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321–23.   Each of these types of pleadings fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Here, as Defendants argue, Plaintiff's 44-page, 134-paragraph complaint is the antithesis of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Moreover, as Defendants argue, the complaint constitutes the third type of shotgun pleading, as several counts of the complaint encompass several claims for relief, such as single claims for unlawful detention/malicious prosecution/due process under multiple constitutional amendments (Counts I, II, and VI).   The complaint is also "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."   For example, Plaintiff's complaint includes a two-page memorandum on the issue of the statute of limitations, without specifying the claims to which the argument allegedly applies.   Doc. No. 1, at 3-4.[19]   Moreover, the complaint

---

[19] Moreover, I note that the section devoted to the statute of limitations is improperly included in the complaint.   *See Chevy Chase Bank, F.S.B. v. Carrington*, No. 09-cv-2132, 2010 WL 745771, at *4 (M.D. Fla. Mar. 1, 2010) (such standards and summaries are "proper in legal memoranda, but [are] almost never proper in a complaint.").   *See also Blount v. Nugen*, No. 16-cv-1971, 2016 WL 8793749, at *2 (M.D. Fla. Nov. 15, 2016) ("Citations of case law and statutes are not appropriate in the complaint, but rather may be included at the time of trial or in a motion for summary judgment.").

includes confusing sections such as one titled "State Law Claims," rendering it less than clear the causes of action Plaintiff is asserting.   *See id.* at 33 ¶ 91.

Accordingly, at a minimum, it is respectfully recommended that Plaintiff's amended complaint be dismissed as an impermissible shotgun pleading.

In sum, I will respectfully recommend that the City, the LPD, and Chief Dowda's motion to dismiss (Doc. No. 22) be **GRANTED in part**, in that the Court should grant the motion to dismiss as to the false arrest claims as barred by the statute of limitations, and the Court should dismiss the LPD as an improperly named Defendant.   Moreover, the official capacity claims against Chief Dowda should be dismissed as redundant of Plaintiff's claims against the City.   And insofar as the motion argues that Plaintiff's complaint fails to state a claim under § 1983, in many respects, those arguments are well taken.   Finally, at the very least, the Court should grant the motions to dismiss on the grounds that Plaintiff's complaint is a shotgun pleading, rendering repleader appropriate.

D.   <u>Leave to Amend</u>.

Plaintiff has not requested leave to file an amended complaint should the motions to dismiss be granted, through either a response to the motions to dismiss or by separate motion.   Nevertheless, a *pro se* party should be given at least one opportunity to file an amended complaint that states a claim within this Court's subject matter jurisdiction on which relief could be granted.   *See Troville v. Venz,*

303 F.3d 1256, 1260 n.5 (11th Cir. 2002); *see also Woldeab v. Dekalb Cnty. Bd. of Educ.,* 885 F.3d 1289, 1291 (11th Cir. 2018) (citation omitted) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.").   However, the Court need not permit amendment if amendment would be futile.   *See generally Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.,* 556 F.3d 1232, 1241 (11th Cir. 2009) (internal quotations and citation omitted) ("In deciding whether to grant a party leave to amend a pleading, a district court may consider several factors, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.").

Given that several of the deficiencies discussed in this Report could in theory be rectified by amendment to the complaint, namely some of the claims against the Officer Defendants in their individual capacities, the claims against Chief Dowda in his individual capacity, and Plaintiff's claims against the City, I will respectfully recommend that the Court permit Plaintiff leave to amend the complaint on these limited bases.

## IV.   RECOMMENDATIONS.

For the reasons discussed herein, it is respectfully **RECOMMENDED** that the Court:

1. **GRANT** the State Attorney Defendants' Motion to Dismiss Plaintiff's Complaint with Prejudice (Doc. No. 16).

2. **GRANT in part and DENY in part** the Defendants', City of Longwood, Longwood Police Department, Longwood Chief of Police David Dowda, Motion to Dismiss (Doc. No. 22).

3. **GRANT in part and DENY in part** the Defendants', Ofc. Mason Rothenburg, Ofc. Corporal B. Racine, Ofc. Sgt. Kristopher Burnam, Lt. Shea Lieutenant, Motion to Dismiss (Doc. 23).

4. **DISMISS** the case against the State Attorney Defendants (Office of the State Attorney for Seminole County, Richard Farmer, and James Carter) **with prejudice.**

5. **DISMISS** the case against the Longwood Police Department **with prejudice.**

6. **DISMISS** the official capacity claims against the Officer Defendants (Mason Rothenburg, B. Racine, Kristopher Burnam, and Shea Lieutenant) and Chief David Dowda **with prejudice.**

7. **DISMISS** the unlawful detention/false imprisonment claims against each of the Defendants as time-barred.

8. **PERMIT** Plaintiff to file an amended complaint against the City, Chief Dowda (individual capacity) and the Officer Defendants (individual capacities), within a time established by the Court, to rectify the deficiencies outlined, and as set forth, herein.

## NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.   Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 20, 2021.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record

Unrepresented Party